VIRGINIAN RY. CO. v. SYSTEM FEDERATION NO. 40 OF RAILWAY EMPLOYEES' DEPARTMENT OF AMERICAN FEDERATION OF LABOR.

No. 4963.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

W. C. Plunkett, of Norfolk, Va., for appellant.

Clarence M. Mulholland, of Cleveland, Ohio (Harry Nicholson, of Norfolk, Va., and Frank L. Mulholland, Willard H. McEwen, and Mulholland, Robie & McEwen, all of Toledo, Ohio, on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a civil action, brought by System Federation No. 40, Railway Employees' Department of the American Federation of Labor (hereinafter called System Federation), as plaintiff, on behalf of four employees designated as turbine and switchboard operators, against the Virginian Railway Company (hereinafter called Virginian), as defendant. The purpose of the action, brought under the federal Railway Labor Act, 45 U.S.C.A. § 153, First (p) (hereinafter called the Act), was to enforce an award and order of the National Railroad Adjustment Board (hereinafter called the Board), established by the Act. The award of the Board was in favor of the claim of the four employees of Virginian.

The case was first heard by Judge Wyche in the United States District Court for the Eastern District of Virginia, on Virginian's motion to dismiss. Judge Wyche overruled this motion. The same motion was renewed at the hearing of this action on its merits in the same court before Judge Way, and again the motion was overruled, and Judge Way entered judgment in favor of the plaintiff. From this judgment Virginian has duly appealed to this Court. The appeal raises three points: (1) were the turbine and switchboard operators covered by the Collective Bargaining Agreement of November 15, 1922 (hereinafter called the Agreement); (2) was System Federation a proper party plaintiff to bring this action; (3) was the award (No. 258) of the Board insufficient and too indefinite to require compliance therewith by Virginian. The first point was decided against Virginian by the Board and also by Judge Way; the second and third points were decided against Virginian by Judge Wyche and

Judge Way. We now proceed to discuss these points in the order above indicated.

(1) Collective Bargaining Agreement.

The claim of the turbine and switchboard operators for time and one-half for all time worked beyond eight-hour shifts and for an allowance of one hour each week for checking in and out on their own time, was based on the Collective Bargaining Agreement. These rights were given to all employees covered by the Agreement in Rules 4 and 46, respectively. Virginian strenuously insists that these employees are not covered by the Agreement. This contention, we think, presents the most difficult and most important question involved in the appeal.

When the Agreement was adopted in 1922, these men were not in the employ of Virginian, and Virginian, at that time, had no employees who would fall under the designation of turbine and switchboard operators. During the year 1925, however, Virginian inaugurated electric train service between the towns of Mullens and Princeton, both in West Virginia, and in connection with the introduction of such train service, Virginian constructed a high tension power house at Narrows, Virginia. The employees, whose claims are involved herein, were hired by Virginian in August, 1925, to work in the power house at Narrows.

The duties of the switchboard operator, as disclosed by the evidence in the proceeding before the Board, are as follows:

"He opens and closes circuit breakers or switches under the direction of the Power Director. He takes meter readings at periodical times; he renews lamp bulbs throughout the plant; he observes the height of the oil in the various motors on the auxiliary equipment, charges the lightning arresters in the sub-station, observes the height of the water in the water rheostats at the river, and any other work that might be designated to him by the Power Director."

The duties of turbine operators, in like manner, were disclosed as follows:

"Their duties are to start and stop the turbines which, in turn, drive the generators. Briefly, in starting a turbine it is necessary to start a small auxiliary oil pump so as to provide lubrication for the bearings before the main pump, which is operated by the turbine itself, comes into operation. Then it is necessary to open a

small number of valves which control the gland water and other auxiliaries, then to open the main throttle. The turbine, as it comes up to speed, automatically brings itself to the proper synchronous speed. After this has been accomplished the turbine operator then opens his main throttle fully and the machine, from then on, operates itself."

The Agreement of November 15, 1922, in its caption, recites that it is an "Agreement Between The Virginian Railway Company and Employees of The Mechanical Department Represented by the Mechanical Department Association of The Virginian Railway Company, Composed of: * * * (5) Electrical Workers, Apprentices and Helpers".

■ Various considerations convince us that the term "electrical workers", as used in the Agreement should be given an interpretation broad enough to cover the turbine and switchboard operators. Such agreements should be realistically construed, since they are drawn with the idea of providing a fairly permanent settlement of the major rights and duties of the parties. The business of railroads and their methods of operation, are dynamic rather than static. It, therefore, seems unreasonable to presume that such agreements would require frequent amendments whenever operating changes occur and employees are hired whose duties are different in some respects from the duties of those who are in the railroad's employ when the agreement is executed. Again, the so-called equities here strongly favor the turbine and switchboard operators. Every conception of fairness leads to the conclusion that, from the standpoint of economic justice, these operators, as to overtime pay and check-in allowance, should receive the same treatment accorded to other employees who are specifically included in the Agreement. When John C. Fox, electrical engineer of the Virginian, in charge of the power plant at Narrows, was asked: "Is it not a fact that these turbine and switchboard operators are generally recognized as electrical workers?", he replied: "We classify them as such on the I. C. C. (Interstate Commerce Commission) classification."

Virginian makes much of the claim that the turbine and switchboard operators do not come within the more specific craft enumerations of Rule 28 of the Agreement which provides for Seniority, and of Rule 37 which fixes the minimum rates of pay

per hour. The apposite portions of these rules are set out below.

"Seniority.

Rule 28.

(a) * * * Seniority lists will be maintained for each craft and sub-division thereof as below:

| Craft | Subdivision |
|---|---|
| Machinists ... | Machinists.<br>Machinist Helpers. |
| Boilermakers . | Boilermakers.<br>Boilermaker Helpers. |
| Blacksmiths .. | Blacksmiths.<br>Blacksmith Helpers. |
| Sheet Metal Workers .... | Sheet Metal Workers.<br>Sheet Metal Worker Helpers. |
| Electrical Workers .... | Electricians.<br>Electricians (Powerhouse Operators).<br>Electric Crane Operators.<br>Electrician Helpers. |
| Carmen .... | Planning Mill Mechanics.<br>Upholsterers.<br>Coach Builders and Locomotive Carpenters.<br>Painters (Varnishers).<br>Painters (Plain Painting).<br>Car Inspectors.<br>Freight Car Builders and Repairers (including Miscellaneous Carpenters—Wood and Steel Car Repairers to be shown on separate seniority lists).<br>Helpers (all classes)." |

"Rates of Pay

Rule 37.

For established rates, see appendix to these rules.

Appendix.

| Classification | Rates Per Hour |
|---|---|
| Electricians—lead workmen ...... | .82 |
| Electricians—journeymen ........ | .70 |
| Electricians—cranemen (40 ton capacity or over)................ | .66 |
| Electricians—cranemen (under 40 ton capacity) ................ | .60 |
| Electricians—Helpers ........... | .47" |

Virginian assumes that the turbine and switchboard operators are not included

within the operation of Rule 28 as to seniority and Rule 37 as to minimum rates of pay. We think there might be some question as to the validity of this assumption, particularly under the broader craft and subdivision enumerations of Rule 28.

But, even if the assumption be correct, we do not believe it necessarily follows that this assumption excludes the turbine and switchboard operators from the benefits of extra pay for overtime under Rule 4 and the privilege of an allowance for checking in and out granted by Rule 46. At the time of the Agreement, Virginian had no turbine or switchboard operators. It might well have been thought that there was then no reason to make definite provision as to seniority and specific coverage of minimum rates of pay for classes of crafts not then employed by Virginian. It does not necessarily follow, however, that there was a like intention to exclude these operators (in case such operators were, as here, subsequently employed) entirely from the Agreement and particularly from benefits thereunder so broad that these benefits, by their nature, would normally accrue to the general run of Virginian's employees.

In this connection, too, we may advert to the provisions of Rules 92 and 93:

"Electrical Workers—Special Rules.

"Qualifications.

"*Rule 92.*

"Any man who has served an apprenticeship or who has had practical experience in electrical work and is competent to execute same to a successful conclusion within a reasonable length of time will be *rated as an electrical worker.*

"Classifications of Electricians.

"*Rule 93*

"Electricians' work shall include electric wiring, maintaining, repairing, rebuilding, inspecting, and installing of generators, switchboards, meters, motors and control, rheostats and control, static and rotary transformers, motor generators, electric headlights and headlight generators, electric welding machines, storage batteries (work to be divided between electricians and helpers as may be agreed upon locally); axle lighting equipment, electric clocks and electric lighting fixtures, winding armatures, fields, magnet coils, rotors, transformers and starting compensators; inside and outside wiring at shops, buildings, yards and on structures, and all conduit work in connection therewith (except outside wiring heretofore recognized as linesman's work); steam and electric locomotives, passenger train cars, electric tractors and trucks; include cable splicers; high tension powerhouse operators; *and all other work properly recognized as electrician's work.*" (Italics ours.)

And Rule 111 provides:

"Except as provided for in the special rules of each craft, the general rules shall govern in all cases."

There is some force in the contention of System Federation that the General Rules establish the norm, the Specific Rules merely the exceptions, if any; and that to make the Special Rules the basis for determining the extent of the field in which the General Rules are to operate, is inconsistent with the spirit of the Agreement and serves to place the cart before the horse.

We are not unmindful of the point, raised by Virginian, that the delay by the turbine and switchboard operators in asserting their rights shows conclusively that, under a contemporaneous and continued interpretation of the Agreement by the parties, no such rights existed. There is evidence in the record, however, to show that these operators were generally regarded by the employees as being covered by the Agreement. And the turbine and switchboard operators appeared, without challenge, to have voted in the elections held by the employees.

Another reason, not without some weight, was asserted by System Federation in justification of this delay. The Agreement was negotiated originally in 1922 with an organization of employees known as Mechanical Department Association, which continued as the recognized representative of the Mechanical Department employees until 1938. Yet, in another proceeding, this very organization was found by the United States District Court to be completely dominated by Virginian. The District Court found further that "no substantial grievances were ever taken up by the Association representative with the Railway". System Federation No. 40 v. Virginian Railway Co., D.C., 11 F.Supp. 621, 623. These findings were affirmed by our Court in Virginian Railway Co. v. System Federation No. 40, 4 Cir., 84 F.2d 641, affirmed by the United States Supreme Court, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. The turbine and switchboard operators cer-

844

tainly had some reason for thinking they had scant chance of securing any redress through such an organization.

Nor are we impressed by Virginian's contention that there are some classes of employees in its Mechanical Department which clearly fall without the coverage of the Agreement. It does not follow, by any means, that therefore the Agreement does not apply to these turbine and switchboard operators; for, in the light of what has already been said, quite different considerations are applicable to these operators— considerations that would not apply to the classes of employees as to whose exclusion from the Agreement there can be little conflict of opinion.

■ Finally, in this connection, we advert again to the fact that Virginian's contention of non-coverage of these turbine and switchboard operators has been decided adversely to Virginian by Judges Wyche and Way, and also by the Railway Labor Board. The Railway Labor Act, 45 U.S C.A. § 153 First (p), provides that the findings and order of the Board "shall be prima facie evidence of the facts therein stated". This Board is composed of specialists who may be presumed to have peculiar skill and knowledge in the field of collective agreements between railroads and their employees. One-half of the members of the Board are drawn from representatives of railroad management; one-half from representatives of railroad employees. Though the particular reasons assigned by the Board for its decision in the instant case are not altogether satisfactory, we should not overlook the fact the Board, by unanimous judgment, decided in this case that a fair and reasonable interpretation of the Agreement brought within its coverage the turbine and switchboard operators. As to the great weight to be given by the courts to the determinations of federal administrative bodies, see the strong language used by Mr. Justice Reed in Gray v. Powell, 314 U.S. 402, 411–413, 62 S.Ct. 326, 86 L.Ed. 301.

(2)   System Federation as Proper Party Plaintiff.

The instant action was originally instituted in the District Court in the names of System Federation No. 40 and certain of its officials. Later, the names of the individual plaintiffs were dropped, and the System Federation was retained as the sole party-plaintiff. Virginian maintains, that under the Act, System Federation is not a proper party-plaintiff to maintain this action in the District Court. We believe this contention is quite lacking in merit.

Various sections of the Act make provision for the settlement of disputes involving the interpretation and application of collective agreements. Many of these provisions empower the bargaining representative of the employees to act on behalf of the interested employees. And the Act, 45 U.S. C.A. § 151 (6) specifically states:

"The term 'representative' means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them."

Indeed, Congress, by the terms, philosophy and history of the Act, seems to have turned to the representatives (which are normally labor unions) of the employees as the usual agents for attempting to settle controversies arising under the Act and for enforcing the awards of the Board. Again, the analogy of the National Labor Relation Act, 29 U.S.C.A. § 151 et. seq., has persuasive force here.

■ Moreover, the Act (§ 3, First (p) provides that "if a carrier does not comply with an order of * * * the Board * * * the petitioner, or any person for whose benefit such order was made, may file * * * a petition" in the District Court. Clearly the word "petitioner" must refer to the petitioner before the Board. And System Federation was here the petitioner before the Board.

We feel, accordingly, that we cannot uphold this contention of Virginian. Judges Wyche and Way both held that System Federation is a proper party-plaintiff to institute this action. And we think they were clearly right in so holding.

(3)   The Indefiniteness of the Award.

■ Finally, we come to the contention of Virginian that the award (No. 258) is too indefinite to require compliance therewith on the part of Virginian, and that, accordingly, no suit can be instituted in the District Court, under the Act for the failure of Virginian to comply with the order. This contention, we think, is highly technical. The award of the Board, No. 258, reads as follows:

"Claim of employees sustained to the effect that turbine and switchboard operators in the Narrows, Virginia, plant come under the scope of the agreement between the parties, and effective from this date pay-

ment for time worked will be allowed accordingly."

We are satisfied that the interested parties knew precisely just what relief was sought on behalf of the four employees. The Board had no difficulty as to just what it was asked to do. The award was no puzzle either to Judge Wyche or Judge Way. And Judge Way has, on this award, entered a precise and specific judgment with a mathematical accuracy that is hardly open to contest.

The judgment of the District Court is, accordingly, affirmed.

Affirmed.