**HUNTER et al. v. ATCHISON, T. & S. F. RY. CO. et al.**

No. 9595.

United States Court of Appeals Seventh Circuit.

Dec. 14, 1948.

Rehearing Denied Jan. 14, 1949.

Burke Williamson, and Jack A. Williamson, both of Chicago, Ill.(Adams Nelson & Williamson and Robert McCormick Adams, all of Chicago, Ill., of counsel), for appellants.

Richard E. Westbrooks, Alvin A. Turner and William J. Milroy, all of Chicago, Ill., for appellees.

William J. Milroy, of Chicago, Ill. (R. S. Outlaw, of Chicago, Ill., of counsel), for Atchison, T. & S. F. Ry. Co., defendant-appellee.

Before MAJOR, Chief Judge, SPARKS, Circuit Judge, and LINDLEY, District Judge.

MAJOR, Chief Judge.

This is an appeal from a temporary injunction issued February 6, 1948, enjoining and restraining the defendants from enforcment and execution of the provisions of an Order and Award entered April 20, 1942 by the National Railroad Adjustment Board (herein referred to as the Board), First Division, Award No. 6640, by removing and displacing the plaintiffs or members of the class or craft to which they belong from their positions as porter brakemen on trains of the defendant, The Atchison, Topeka and Santa Fe Railway Company, (herein referred to as the Santa Fe), which positions the plaintiffs then held and occupied.

The plaintiffs are a group of train porters employed by the Santa Fe, and the defendants are the Board, its members and secretary, the Santa Fe, which operates its railroad through a number of states, F. W. Coyle, vice-president of the Brotherhood of Railroad Trainmen (herein called the Brotherhood) and nine individual brakemen, employees of the Santa Fe and members of the Brotherhood, to whom the disputed work was awarded by the Award under attack.

Plaintiffs in their complaint allege that the Board's Award is void for the reason that they had no notice of the proceeding

596

and consequently no opportunity to be heard. The court premised the injunction order appealed from upon certain factual findings which included a finding that no notice of said proceeding was given to the plaintiffs or to any member of the class or craft to which they belong, and that such proceeding was carried on in their absence. The court found that the Santa Fe on demand of the brakemen notified plaintiffs that the Board's Award would be immediately enforced against them by their removal from their regular runs, and that they would be replaced by members of the class or craft to which the brakemen belonged. Further, it was found that the individual brakemen through the Brotherhood are continuing to insist that the Santa Fe comply with the terms of the Award and that Santa Fe will do so unless enjoined by order of the court, and that such compliance will result in immediate and irreparable injury, loss and damage to the plaintiffs.

The court concluded as a matter of law that the Order and Award of the Board was void because rendered without notice to the plaintiffs within the terms of the Railway Labor Act, § 3 First (j), 45 U.S.C.A. § 153 First (j), and that the enforcement of such void Award deprives plaintiffs of their property rights without due process of law.

Performance of braking duties on the forward part or "head end" of Santa Fe passenger trains constitutes the work in dispute. Such work relates to the actual operation of trains and includes such duties as inspecting cars, testing brakes, opening and closing switches, and giving and receiving signals for train movements. Thus the work in dispute does not include what might be called the regular duties of porters, such as assisting the passengers and keeping the cars clean.

Plaintiffs as porters have performed this disputed work continuously since 1899, and while they have never made a collective bargaining agreement with the Santa Fe, urge that a provision in the Santa Fe's operating rules, promulgated in 1904, requires porters to perform the disputed work, and they claim that by virtue of this and through custom and practice of over forty years duration, they have acquired a contract right to perform such services. Plaintiffs also claim that through custom and usage the Santa Fe has established seniority rights among porters to job assignments as such. Santa Fe states and plaintiffs admit that the latters' duties are performed "at the will of the former."

The brakemen have contended that since 1892 and continuously up to the present time, they have held a contract, made by the Brotherhood as their collective bargaining representative, covering all braking service on the Santa Fe. Their position has been that by such contract the Santa Fe promised to give them the exclusive right, on the basis of relative seniority among them in their respective seniority districts, assignments to all braking work wherever it occurs on Santa Fe trains, passenger or freight, whether on the head end or rear end, and that assignment of personnel not holding seniority as brakemen to do this work violates their collective bargaining agreement or "schedule." During all the years this disputed work has been in controversy the Santa Fe has contended that the brakemen's schedule did not include braking on the head end of passenger trains and that assignment of this work to porters or others was not violative of the brakemen's schedule. Also during these years, the brakemen were unsuccessful in this controversy with the Santa Fe until they won the Board's Award now under attack, which resulted in the Santa Fe assigning to the brakemen the head end braking duties on passenger trains.

The defendant brakemen raise and discuss many issues which we think are beside the point. They argue, for instance, that the dispute is jurisdictional, determinable only by negotiation, mediation or arbitration, as provided by the Railway Labor Act, and that the court was without authority to issue the injunction because of a failure on the part of the plaintiffs to comply with the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. We are of the view that such issues are not before us. They are raised, as we understand, on the theory that a labor dispute is involved and that by the order appealed from the court below has awarded the disputed work to the

porters. Such is not the case. The only issue below, as well as here, is whether the Order of the Board is void for failure to give plaintiffs notice of the proceeding, as alleged in their complaint and as found by the court. And a holding in favor of the plaintiffs means nothing more than that the porters and the brakemen are relegated to the same position they occupied before such Award was made. In such case the parties and the carrier are again free to attempt to settle the dispute by collective bargaining or an appropriate proceeding under the Railway Labor Act. As was said in Missouri-Kansas-Texas R. Co. et al. v. Randolph et al., 8 Cir., 164 F.2d 4, 8, so much relied upon by the brakemen: "Insofar as the railroads propose to terminate the existing contract with the porters and to change their working conditions, the statute gives the porters the right to resort to the Mediation Board, 45 U.S.C.A. § 155, and that Board is required to use its best efforts to bring about an amicable settlement, 45 U.S.C.A. § 152."

Paragraph First (j) of § 3 of the Railway Labor Act, 45 U.S.C.A. § 153 First (j) provides: "The several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

The court below, in holding the Award void in the absence of notice to the porters, relied heavily upon the decision of this court in Nord et al. v. Griffin, 7 Cir., 86 F.2d 481, where the question for decision was quite similar to that of the instant case. The rationale of the decision is that an interested party in the absence of notice was deprived of a constitutional right. The court in Estes et al. v. Union Terminal Co., 5 Cir., 89 F.2d 768, at page 770, placed a similar construction upon the notice requirement and stated: "But in justice and fairness every person who may be adversely affected by an order entered by the Board should be given reasonable notice of the hearing. * * * No man should be deprived of his means of livelihood without a fair opportunity to defend himself. Plainly, that is the intent of the law."

True, the court there found that the aggrieved employee had actual notice and that formal notice was not required. And the brakemen in the instant case, while conceding that the porters did not have formal notice, urge that they had actual notice, which was sufficient under the holding in the Estes case. The fallacy of this contention lies in the fact that the record does not disclose that the porters had notice of any kind prior to the entry of the Award. There is some meager evidence that they became aware of the Award subsequent to its entry and while the proceeding was pending upon a petition for rehearing filed by the Santa Fe. Even so, and assuming that they might have been heard on the petition for rehearing, we are of the view that this dubious privilege cannot be relied upon to remedy the Board's failure to give them "notice of all hearings."

The brakemen attempt to distinguish our holding in the Nord case mostly on the ground that the porters in the instant case were not parties to the contract between the brakemen and the Santa Fe, and they, having no contractual relation with the carrier, are not "involved" in the dispute in issue. It is true, of course, that the porters had no contract with the Santa Fe and that they were employees at will. At the same time, they had performed the disputed work without interruption for almost a half century. If long custom and practice means anything, and we think it does, they had a claim on the disputed work superior to the brakemen or any other class. Their employment, even though at will, was at the will of the carrier and not that of the brakemen. As was said in Truax v. Raich, 239 U.S. 33, 38, 36 S.Ct. 7, 9, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283: "The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will."

It is also true, as argued by the brakemen, that the Award under attack does not directly take the work from the porters and give it to the brakemen, but the effect is precisely the same as though the Award

had done so in express terms. And that the porters had an interest in the disputed work which was adversely affected is hardly open to question. We agree with the lower court that the Nord case is in point and that the Award is void because the porters for lack of notice were deprived of an opportunity to be heard.

■ The brakemen further argue that in any event the court was without jurisdiction to issue the order appealed from because a means had been provided by Congress in the Railway Labor Act for the settlement of such a dispute. In support of this argument, much reliance is placed upon Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, and Missouri-Kansas-Texas R. Co. v. Randolph, 8 Cir., 164 F.2d 4. Neither of these cases, in our view, sustains the contention of the brakemen in this respect. True, in the Pitney case it was held that the court should not have interfered in view of the provisions of the Railway Labor Act, but at the same time the court recognized that a court of equity might act in a proper case. On page 566 of 326 U.S., on page 324 of 66 S.Ct., 90 L.Ed. 318, the court stated: "Of course, where the statute is so obviously violated that 'a sacrifice or obliteration of a right which Congress * * * created', Switchmen's Union v. Board, 320 U.S. [297], 300, 64 S.Ct. [95], 96, 97, 88 L.Ed. 61 to protect the interest of individuals or the public is clearly shown a court of equity could, in a proper case, intervene. [Citing cases.]"

The court, after pointing out that the parties had not availed themselves of the provisions of the Railway Labor Act, stated, 326 U.S. page 567, 66 S.Ct. page 325, 90 L.Ed. 318: "Under these circumstances the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue. Certainly the extraordinary relief of an injunction should be withheld, at least, until then."

The Randolph case, supra, is similar to the instant case in that the disputed work was of the same character and the dispute was between the porters and the brakemen. This is another case where relief was sought in court without first employing the provisions of the Railway Labor Act. The court followed and quoted from the Pitney case and concluded that the court was powerless to grant the relief sought prior to action by the Adjustment Board. The instant case is distinguishable because it is an attack only upon an Award which has been made. It is not sought to obtain a judicial ruling as to the rights of the parties to the disputed work and, as already shown, the order appealed from does not pretend to make such an adjudication. The rights of the parties under the order invalidating the Award are neither determined nor changed. They remain just as they were before the Award was made.

■ It is also argued here that the Award is void because it was beyond the authority of the First Division of the Adjustment Board which made it. We think there is merit in this contention. As was stated in the Pitney case, supra, 326 U.S. page 565, 66 S.Ct. page 324, 90 L.Ed. 318: "Section 3 First (i) of the Railway Labor Act provides that disputes between a carrier and its employees 'growing out of * * * the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * may be referred by either party to * * * the Adjustment Board.' "

That the contract between the brakemen and the carrier which the Board purported to interpret and apply is free from ambiguity can hardly be doubted. Without entering into any detailed discussion of this phase of the case, it is sufficient to point out, as already noted, that the porters have performed the disputed work continuously since 1899, and that for a similar period the brakemen have attempted to procure it for themselves. On complaint of the brakemen, filed October 1, 1925, the same dispute for all practical purposes as that now involved was submitted to the Train Service Board of Adjustment, which was established by agreement of the Brotherhood of Railroad Trainmen and the carriers, which Board on September 9, 1926 decided the dispute adversely to the brakemen. Notwithstanding this adverse decision, the Brotherhood of Railroad Trainmen on behalf of the brakemen filed another claim raising

the same issue before another Board, and on February 8, 1927, again received an adverse decision. Prior to the rendition of this latter decision, the parties entered into a written agreement that the decision in the case should be final and binding upon the parties to the dispute. Between the dates of these two adverse decisions, the Brotherhood of Railroad Trainmen on behalf of the brakemen negotiated a schedule agreement with the Santa Fe effective December 1, 1926, and it is by reason of the interpretation which the Board places upon this agreement that the disputed work has been awarded to the brakemen. In doing so, it does not mention and appears to have ignored entirely the following provision of the 1926 agreement: "The term 'Trainman' or 'Trainmen,' as used in this agreement, is understood to mean freight and passenger Brakemen, and Baggagemen, with the further understanding that this definition does not change, alter or extend present application of these rules to baggagemen or train porters."

While other provisions of the agreement may furnish a feeble basis for the contention that the brakemen under this contract were entitled to the disputed work, the provision of the agreement which we have just quoted leaves no room for doubt that such agreement was not to extend to the work then being performed by the porters. In reality, what the Board did was not merely to exercise its statutory authority to interpret and apply the contract as it existed but to make a new and different contract between the brakemen and the carrier. We think the five members of the Board who dissented from the Award properly characterized the action of the majority when they stated in their dissenting opinion: "The lesson of the award is that contracts may be altered, changed, or amended, in plain violation of the Railway Labor Act,

merely by the assertion of a claim which has no foundation for support in the agreement. That these are the correct conclusions to be drawn from the wanton usurpation of power by the majority which voted for the award, is adequately fortified by the undisputed facts of record which were before us."

While we are of the view that the Award is void because the Board exceeded its authority, we place our decision primarily upon the ground that it was made without notice to the porters, as the statute requires, and that their constitutional right to a hearing was denied.

There is also the contention that the Brotherhood of Railroad Trainmen as representative of the brakemen was an indispensable party to the instant action. Again, this argument proceeds on the theory that the order appealed from takes something away from the brakemen to which they are rightfully entitled. As already shown, such is not the case. F. W. Coyle, vice-president of the Brotherhood of Railroad Trainmen, was made a party-defendant, so there can hardly be any question but that the Brotherhood had actual notice of the suit. It made no application for intervention, which it could have done had it been desirous of being heard. See Baltimore & Ohio Railroad Co. et al. v. Chicago River & Indiana Railroad Co. et al., 7 Cir., 170 F.2d 654, 658. It also appears that intervention has been recognized as proper in situations similar to that occupied by the Brotherhood. See Order of Railway Conductors v. Pitney, supra, 326 U.S. 564, 66 S.Ct. 322, 90 L. Ed. 318, and Order of Railway Conductors v. Swan, 329 U.S. 520, 524, 67 S.Ct. 405, 91 L.Ed. 471. Other questions which have been raised we think are without merit and need not be discussed.

The order appealed from is affirmed.