**KIRBY et al. v. PENNSYLVANIA R. CO.**

No. 10290.

United States Court of Appeals Third Circuit.

Argued Dec. 7, 1950.

Filed April 23, 1951.

794

Harvey N. Schmidt, Philadelphia, Pa. (Rufus Scoville Watson, James K. Baker, Philadelphia, Pa., on the brief), for appellant.

Owen B. Rhoads, Philadelphia, Pa. (John Dickinson, Guy W. Knight, and Harold P. Dicke, all of Philadelphia, Pa., Barnes, Dechert, Price, Myers & Clark, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge and GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the validity of an award and order of the Third Division of the National Railroad Adjustment Board. It comes to us on appeal from an order of the court below dismissing the plaintiff's complaint, which sought enforcement of an order of that Board, because it failed to state a claim upon which relief could be granted under the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq.

The plaintiff's complaint, the allegations of which must be taken as true for purposes of this appeal, tells the following story:

Plaintiffs, 39 women residents of Pennsylvania, were employed by defendant, an interstate carrier, as truckers at its Philadelphia freight transfers. On or about March 15, 1945, and continuing to October 23, 1946, plaintiffs' positions were abolished by defendant in violation of a contract between defendant and the Brotherhood of Railway Clerks.[1] As a result of defendant's action the Brotherhood submitted a claim to the Railroad Adjustment Board for reinstatement and back pay for four named employees (not the present plaintiffs) and others adversely affected by the carrier's actions. A hearing was had as a result of which the Board issued an award sustaining the claim and an order requiring defendant to comply with the award on or before April 1, 1949. The defendant has refused to comply with the order and plaintiffs seek court enforcement. Plaintiffs were not parties before the Board but seek relief as "others adversely affected."

There are three main divisions to what must be considered on the appeal. The first has to do with the sufficiency of the findings and award of the Board. The second concerns the right of plaintiffs to be in court. The third involves the requirements of notice.

A. The Form of The Award.

The appellee enthusiastically concurs with the District Court's conclusion[2] that the form of the award by which the Railroad Adjustment Board disposed of the claim is not sufficient to make it the basis of a court action. We disagree, although admittedly the point is not one free from difficulty.

Let us show first the material with which we have to work. The order of the Third Division of the Railroad Adjustment Board which plaintiffs seek to have enforced calls upon defendant "to make effective Award No. 4291" on or before April 1, 1949. A copy of the award accompanies the order and is made a part thereof.[3]

---

1. Shorthand for "The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees."

2. Kirby v. Pennsylvania R. Co., D.C.E.D. Pa.1950, 92 F.Supp. 417. The court stated that the award was not "sufficiently clear and definite to be capable of enforcement."

3. A copy of the order was attached to plaintiffs' complaint. The award was made part of the record by stipulation on motion to dismiss.

The "Award" consists of the following: Statement of Claim, Employes' Statement of Facts, Position of Employes, Carrier's Statement of Facts, Position of Carrier, Opinion of Board, Findings, and Award.

The Statement of Claim reads as follows:

"(a) Rule 3–C–2 was violated by the Carrier when positions of Truckers, Philadelphia Transfer, held by Pattie S. Hayes, Mary Gambrell, Eula O. Smith, Ora Dorsey and others, were abolished effective May 13, 1946 and the work assigned to Contract Employes not covered by the Rules Agreement.

"(b) These positions be re-established and the incumbents, as well as any others adversely affected, be compensated for any monetary losses sustained. (E–355, E–357 & E–358)."

Under the heading of "Award" appears the following:

"Claim (a) sustained.

"Claim (b) sustained on the reestablishment of the positions for those listed and others adversely affected; that monetary losses sustained be confined to proof of the same, with deductions allowed from earnings from other sources during the period under consideration."

The "Findings" consist of statements that notice and a hearing were given to the parties, the division has jurisdiction, and that the claim is sustained. The opinion summarizes the parties' positions, cites several awards and concludes that defendant violated the rules agreement. It does not summarize the facts. The remainder of what is called Award No. 4291 is simply a reprint of the submissions of the parties.

All this comes a long way from being the neat, definite and precise findings of fact and conclusions of law from the pen of an experienced and conscientious trial judge made pursuant to the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Does it follow that a complaint based on such an award is too vague to be made the basis of an enforcement decree by a court? It is to be borne in mind that this Railroad Adjustment Board is not a lawyers' tribunal. It is a bipartisan board composed of railroad men selected, paid and serving at the will of their respective principals, management and railroad unions. Referees are called in only when the Board is deadlocked. The referees are, we understand, usually lawyers, but they are not permanent employees of the Board. The handling of claims by various divisions of the Railroad Adjustment Board is seldom if ever a matter of taking testimony on controversial facts. The proceedings are carried from one step to another by persons familiar with both background and immediate controversy.[4] When a referee is brought in, he is usually advised of the facts through the respective representatives of each side of the controversy. Everyone concerned knows what the dispute is, though disagreeing upon its settlement.

■ This description of the operation of the Board is not in the record in this case, but it is outlined at length in an admirable paper by Lloyd K. Garrison[5] and it also appears in the Attorney General's administrative procedure report.[6] The latter, of course, is a public document.

4. A prerequisite to Board jurisdiction is attempted settlement by negotiation at regular established levels. See 45 U.S.C.A. § 153, First (i). As a result factual questions are in most cases ironed out before the case ever reaches the Board. See Garrison, note 5 infra at 579; Jones, note 6 infra at 168.

5. Garrison, The National Railroad Adjustment Board, A Unique Administrative Agency, 46 Yale L.J. 567 (1937). See also Spencer, The National Railroad Adjustment Board, 8 University of Chicago Studies in Business Administration, No. 3 (1938), reprinted in Jones, note 6 infra;

Note, Railroad Labor Disputes and the National Railroad Adjustment Board, 18 U. of Chi.L.Rev. 303 (1951).

6. Rep. Atty. Gen. Comm. Ad. Proc. 185–188, 441, Sen. Doc. No. 8, 77th Cong., 1st Sess. (1941). · See also the Committee's staff report, Sen. Doc. No. 10, 77th Cong., 1st Sess., Part 4 (1941). For a collection of all material considered by the Committee relevant to the Railroad Adjustment Board and the transcript of the hearings see Jones, Harry E., Inquiry of the Atty. Gen. Comm. Ad. Proc. Relating to the National Railroad Adjustment Board (1940).

We take it also that the operation of the Board is a performance by a public body of which we may take judicial notice.

While it may be granted that the performance by the Adjustment Board in this informal fashion fulfills with fair satisfaction the purpose for which it was created, it does not fully meet the question of the place of a product of such Board's actions in a court of law. Why should the award of such an informally conducted body have any more standing in a court of law than the minutes of a literary society? The reason is, of course, that Congress has said so. The pertinent provision is found in 45 U.S.C.A. § 153, First (p). It provides as follows: "(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court * * * shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated * * *. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may

be appropriate to enforce or set aside the order of the * * * Board."

So we have this situation. The Congress has provided for the submission of certain railway labor disputes to a body which over the years has established its own method of operation in a way which gives each side a chance to have its problems heard and decided by persons who are thoroughly familiar with the industry and the kind of questions presented. The law-making body has thought well enough of the type of operation to provide for the enforcement of its results where necessary.[7] But it has protected the party who lost before the Board from having unfair advantage taken of him by making the findings of the Board prima facie only. The loser must go forward with attacking proof; but the facts are not conclusively established by the findings.[8] We think under these circumstances to insist upon the kind of definite requirement of findings of fact to which we are accustomed in the ordinary non-jury case would be doctrinaire and unrealistic.[9] We think courts should take the findings of these divisions of the Railroad Adjustment Board as they come and do what they can with them.[10]

Conceivably there could be an award so vague as to be incapable of enforcement.[11] But we do not think the one in this case is and we think that a careful reading of the material in the record before us is sufficient to show both

7. The existing procedure, established by the Railway Labor Act of 1934, 48 Stat. 1189, 45 U.S.C.A. § 153, is patterned after that of earlier bi-partisan system and regional boards with important changes to provide for the settlement of deadlocks and to make the decisions binding and enforceable. See generally, Garrison and Sen. Doc. No. 10, supra.

8. See Dahlberg v. Pittsburgh & Lake Erie R. Co., 3 Cir., 1943, 138 F.2d 121; Washington Terminal Co. v. Boswell, 1941, 75 U.S.App.D.C. 1, 124 F.2d 235, 241.

9. The only provisions of the Railway Labor Act relevant to the content of an award are 45 U.S.C.A. § 153, First (p), quoted supra, and (m) which provides: "The awards * * * shall be stated in writing. * * *"

10. It must be noted that this conclusion differs substantially from that expressed in Railroad Yardmasters of North America, Inc., v. Indiana Harbor Belt R. Co., 7 Cir., 1948, 166 F.2d 326, 329–331 and System Federation No. 59 v. Louisiana & A. R. Co., 5 Cir., 1941, 119 F.2d 509, 513, certiorari denied, 1941, 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526. Compare, however, Virginian R. Co. v. System Federation No. 40, 4 Cir., 1942, 131 F.2d 840, 844–845; Munsey v. Virginian R. Co., D.C.E.D.Va.1941, 39 F.Supp. 881, 883.

11. The only power given the court is to "enforce or set aside the order of the * * * Board." 45 U.S.C.A. § 153, First (p). To this extent the proceeding is like an action on a judgment. The

the controversy and how it was decided and who the beneficiaries were. This is enough to permit a trial to enforce the award to proceed. Of course the plaintiffs must show that they are within the scope of persons covered in the award since they were not the complainants in the first instance.

### B.   May These Plaintiffs Sue?

■ The statute provides for enforcement of a Board order not only at the suit of petitioner before the Board, but by "any person for whose benefit such order was made." [12] We conclude that plaintiffs' complaint is sufficient to show that they are persons for whose benefit Award No. 4291 was made, and that they have standing to seek enforcement of it.

The claim before the Board sought reinstatement and back pay to four named persons and others whose positions as "truckers, Philadelphia Transfer * * * were abolished effective May 13, 1946." The award and order directed reinstatement of "those listed and others adversely affected," and confined payment of money losses to those proved. It seems plain that "others adversely affected" refers to those other than the four named claimants whose positions as "truckers, Philadelphia Transfer * * * were abolished effective May 13, 1946" in violation of the rules. The order was made for the benefit of that group as well as the four named claimants. If it subsequently appears that any of plaintiffs were not in the class covered by the award, as above described, the action may be dismissed as to them.

■ Defendant contends that plaintiffs' complaint is inadequate to give them standing to seek enforcement of the Board's order for another reason. It asserts that under the holding of the Supreme Court in Elgin, Joliet & Eastern R. Co. v. Burley, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, adhered to on rehearing 1946, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928, plaintiffs must allege and prove that they authorized the union to represent them before the Board. We disagree. The Elgin case held only that a Board order was not a bar to later suit by individual employees not represented or notified in some way of the proceedings culminating in the order. The question in the case at bar is quite different: Are plaintiffs entitled to bring action to *enforce* a Railroad Adjustment Board order under a statutory provision giving this right to "any person for whose benefit such order was made"? We conclude that the answer to that question does not depend on whether an adverse order would have bound plaintiffs. A plaintiff who shows that an order was made for his benefit has made out his right to be in court.

■ The result may be that an employee may have rights under an order which would not have bound him had it been in the carrier's favor. This result does not ignore the rule that the estoppel of a judgment must be mutual, nor does it do injustice to the carrier. The principle of mutuality of estoppel is that a judgment which is not conclusive as to facts and law as against a party to a lawsuit shall not be so considered as to his adversary.[13] That principle has no application here simply because no such effect is being accorded the Railroad Adjustment Board order against defendant. This is not an action on a judgment which is binding on the law and facts but merely an action to enforce an administrative order which is only prima facie evidence of any findings of fact.

### C.   Notice.

As an additional basis for granting the motion to dismiss, the district judge stated that there was nothing in the award to indicate that notice of the hearing before

---

court cannot shape a new order. Thus, if the order or award is so vague that the court is unable to tell what it requires, then we agree that a complaint seeking enforcement of it may be dismissed.

12.   45 U.S.C.A. § 153, First (p).

13.   The rule that the estoppel of a judgment must be mutual is not without exception. See, e. g. Restatement, Judgments § 96, comment a (1942).

the Board was given to the employees "now performing the work which the plaintiffs seek," [92 F.Supp. 423.] [14] and who, under the Act, are entitled to notice.

The question of who is entitled to notice and an opportunity to be heard in Board hearings has been the subject of considerable debate and litigation ever since the creation of the Board. The statute provides that "the * * * Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them." 45 U.S.C.A. § 153, First (j).[15] The problem has come before the courts in several ways. It has arisen principally in suits by individual employees who, threatened with loss of their jobs or their place on the seniority list, seek to enjoin the carrier from complying with a Board order entered without notice to them. In each of these cases the court has enjoined the carrier from complying with the order.[16] The notice problem has arisen before the Supreme Court as part of the question of whether an award of the Board in favor of the carrier was a bar to court action regarding the same dispute by an individual employee. The Court held that it was no bar unless notice and opportunity to be heard before the Board had been accorded the employee, or unless he had authorized the union to represent him.

Elgin, Joliet & Eastern R. Co. v. Burley, supra. In only one case has it arisen in the manner in which it arises here—as a defense offered by the carrier in an enforcement action. In that case the court said that the order could not be enforced unless notice had been given individual employees involved, but it also said that the order was not invalid in that instance because it appeared that the employee had actual knowledge and opportunity to participate. Estes v. Union Terminal Co., 5 Cir., 1937, 89 F.2d 768.

These cases establish that in certain instances individual employees who may be adversely affected by an award are entitled to notice and an opportunity to be heard before the Adjustment Board. But this still leaves open two questions: (1) Can the carrier raise lack of notice to someone else as a defense to it? (2) Are there employees entitled to notice in the case before us who did not receive it?

It has never been squarely decided whether lack of notice to individual employees involved in the dispute renders the order wholly unenforceable, or merely subjects it to attack at the suit of such employees. If the carrier is not permitted to raise the question of notice to employees, it is in a dilemma in·deciding whether to comply with a Board order. If it complies, it may be exposed to suit by the ousted

14. The quoted language is that of the district judge. We take it that "now" refers to the time of the Board hearing. Certainly the Board cannot be expected to give notice to anyone who acquired an interest at a later date.

15. As a matter of practice in three of the four divisions (including the 3d) notice has been given only to the labor organization which filed the claim and the carrier against whom it was filed. When the question of giving notice to individual employees has come before these divisions the union members have voted against it and the carrier members in favor of it, the result being a deadlock. The question has been regarded as procedural, thus has not been referred to referees. The union members' position on this and related questions (filing of claims by individuals, intervention by individuals) has been that individuals are not proper parties before the Board. Their theory has been that the contracts upon which the claims before the Board are based are contracts between the unions and the carriers, that the Board members are selected and paid by these organizations, that the proceedings before the Adjustment Board are part of the collective bargaining system, and that therefore individuals have no place there. See Jones at 20–23, 55, 343–345; Sen. Doc. No. 8 at 188, Sen. Doc. No. 10 at 7–10, supra note 6.

16. Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 1950, 181 F.2d 527, certiorari denied, 1950, 340 U.S. 823, 71 S.Ct. 57, rehearing denied, 1950, 340 U.S. 885, 71 S.Ct. 193; Hunter v. Atchison, T. & S. F. R. Co., 7 Cir., 1948, 171 F.2d 594, certiorari denied sub nom. Shepherd v. Hunter, 1949, 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726; Nord v. Griffin, 7 Cir., 1936, 86 F.2d 481, certiorari denied, 1937, 300 U.S. 673, 57 S.Ct. 612, 81 L. Ed. 879.

employees for back pay and reinstatement. If it refuses to comply it may increase the amount of back pay owed the claimants. Either way it runs the risk of paying two groups of employees for the same work.[17]

In addition to these considerations based on fairness, there is another reason which, though technical, loses nothing in force thereby. The Board's authority to act is based upon the statute. Until the statutory requirements are met, it has no more standing to produce legally effective orders than any voluntary group of citizens. Anyone to be affected by the purported order can raise the point that it has no legal foundation. We conclude that defendant carrier may raise the point that employees involved in the dispute had no notice or knowledge of the hearing, and no opportunity to be heard before the Adjustment Board. A party is entitled to an award that will protect it in the event that it complies.[18]

However, we do not agree with the court below that the defense was properly made out in this case. In the first place the Supreme Court has said that the awards of the Board are clothed with a presumption of validity, and that the burden is on the one who would upset the award to show that it is invalid. Elgin, Joliet & Eastern R. Co. v. Burley, supra, 327 U.S. at page 664, 66 S.Ct. at page 722. We think, therefore, that it is not necessary to the validity of the award that it appear on its face that formal notice of the hearing was given to all employees involved. Whether or not such notice was in fact necessary or given is something that the carrier must raise affirmatively.

Defendant has raised the question of lack of notice of the proceedings before the Board in this case by its motion to dismiss. If it appears from the complaint that there were "employees involved" who received no notice of the proceedings this is a proper method of raising the defense, for the plaintiffs will have supplied defend-

ant with the facts necessary for attacking the order. The award upon which the complaint is based may be considered a part of the record for this purpose. The Board's findings state merely that "the parties to this dispute [received] due notice of hearing thereon," and another portion of the award describes the parties as the union and the carrier. We may assume, arguendo, that formal notice was given only to these two organizations, and to no individuals. We may even assume, also arguendo, that no individual employees had knowledge which is the equivalent of notice. The question remains whether the complaint or award shows that there were any persons entitled to notice under the statutory language "employees involved."

Carrier's contention, accepted by the court below, is that the persons who would lose their jobs by compliance with the Board order are "employees involved" and entitled to notice. The Board did not find who such persons were. The claim before the Board alleged that carrier had hired "contract employees" to do the work previously done by claimants. Carrier did not deny this. The complaint in this enforcement suit makes the same allegation. The inference from this is that these are the persons who would lose their jobs by reinstatement of the plaintiffs and other claimants. It is impossible to know for certain whether these persons ever became employees of the Pennsylvania Railroad or not. The inference is that they did not, but that the railroad got them from a neighborhood contractor as and when needed. If this is so, we think it clear that failure to give them notice does not deprive the award of effectiveness. Such persons would have no interest which entitled them to a hearing before the Board nor even to consideration by it, and certainly they would not be entitled to notice of the proceedings as "employees involved."

We do not predicate our decision on the inference just made, however. We think the result may be the same even if the persons hired by the carrier to do the work

17. See Jones, note 6 supra, at 271, 313–316.

18. See Railroad Yardmasters of North America, Inc., v. Indiana Harbor Belt R. Co., 7 Cir., 1948, 166 F.2d 326, 331.

of the plaintiffs and others similarly situated, did become employees of the Pennsylvania Railroad. Who are "employees involved" under the statutory language? The exact meaning has never been settled; perhaps it never can be.

The cases which have passed upon it have all involved factual situations quite different from ours. They involved disputes between two or three employees over seniority ratings [19] or between two groups of workmen both long-time employees of the carrier, over which group was entitled to do a particular type of work.[20] The interest of such employees, the extent to which the Board should be required to consider such interests, and the type of dispute involved were not even similar to our problem here.

We do not know on what basis, if at all, the workers who replaced plaintiffs were employed by the defendant and whether out of such employment, they acquired a status which gave them such rights in their jobs as entitled them to notice and opportunity to be heard before the Board. Anyone employed by another, even purely at will, has some "interest" in his job.[21] But the mere fact of that employment, without more, is not enough to make him a necessary party in an Adjustment Board hearing. Here we do not know whether the replacement workers became employees, nor upon what terms if they did. We have no knowledge of facts upon which we can say notice to them was required. ·

So far as this litigation is concerned at this stage, the order stands on the presumption of validity attributed to it by the Supreme Court in the Elgin case. On remand the trial court may hear evidence on the question of what employees, if any, would have been replaced by defendant's compliance with the Board's order, and whether they received notice or had knowledge of the proceedings. Then the court can determine whether these employees had such an interest as entitled them to notice of the Board hearing, and whether they received it or the equivalent. In the event that the defendant fails to meet the burden of upsetting the Board's award on this basis, the case then may proceed to a trial on the merits.

The judgment will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

19. Nord v. Griffin, note 16 supra; Estes v. Union Terminal Co., supra.

20. Brotherhood of Railroad Trainmen v. Templeton, supra; Hunter v. Atchison, T. & S. F. R. Co., supra.

21. Truax v. Raich, 1915, 239 U.S. 33, 38, 36 S.Ct. 7, 60 L.Ed. 131; Hunter v. Atchison, T. & S. F. R. Co., supra, 171 F.2d at page 597; Restatement, Torts §§ 809–812 (1939).