**WOOD et al. v. RANDOLPH et al.**

**MISSOURI–KANSAS–TEXAS R. CO. et al.**

v.

**RANDOLPH et al.**

Nos. 14547, 14548.

United States Court of Appeals Eighth Circuit.

Feb. 2, 1954.

Rehearing Denied March 9, 1954.

See also 100 F.Supp. 139.

John Murphy, Kansas City, Mo. (J. Gordon Siddens and Tucker, Murphy, Wilson & Siddens, Kansas City, Mo., were with him on the brief), for appellants R. D. Wood and others.

M. E. Clinton, Dallas, Tex. (Wayne R. Howell, Carl S. Hoffman, St. Louis, Mo., G. H. Penland, Dallas, Tex., and Frank J. Rogers, Kansas City, Mo., were with him on the brief), for appellants Missouri-Kansas-Texas R. Co. and Missouri-Kansas-Texas R. Co. of Texas.

Clif Langsdale, Kansas City, Mo. (Gibson Langsdale, Kansas City, Mo., was with him on the brief), for appellees.

Before GARDNER, Chief Judge, and STONE and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These are appeals by the defendants from a final injunctive decree entered in suits begun in the district court in 1946. This is the third time they have been before this court. See 164 F.2d 4 and 182 F.2d 996. Jurisdiction of the federal court is predicated upon diversity of citizenship of the parties and the amount involved.

The controversy involves a dispute between plaintiffs-appellees, referred to as Train Porters, and the defendants-appellants, referred to as Trainmen and Carriers. The Porters are Negroes, members of the Brotherhood of Sleeping Car Porters, Train, Chair Car, Coach Porters and Attendants, an unincorpo-

rated labor union, and they are members of Local Train Porters Union No. 3, an unincorporated labor union, employed by the Carriers. The defendant Trainmen are white men. They are members of the Brotherhood of Railroad Trainmen employed by the Carriers. The other individual parties are officers of the unions.

The Train Porters contend that their rights spring from a written contract with the Carriers dated December 3, 1928, and long custom extending over a period of more than 50 years, and that the Trainmen are wrongfully seeking to induce and compel the Carriers to annul such contract by unlawful means, and to take from the Porters their right to perform such services and to receive pay therefor, and to give the performance of such services to the Trainmen.

The Trainmen claim that it was their right to perform such services under a contract between them and the Carriers.

There are six classes of services, designated in the pleadings and briefs as "Services in Controversy", which the court found had been performed by the Porters on the front of the Carriers' trains running between Dallas, Texas, and Kansas City, Missouri, for more than 40 years, which the Trainmen claim as their work in a letter addressed to the Carriers in April, 1946, and which they demanded be taken from the Porters and given to the Trainmen. As found by the court, they are:

1. Inspect cars and trains and test signal and brake apparatus for the safety of train movements, as per Carriers' rules.

2. Use hand and lamp signals for the protection and movement of trains and engines, including the necessary flat protection on the head end of trains, or through block.

3. Open and close switches and derails for switching and for the movement of trains and engines enroute; around wyes; and at some terminals.

4. Couple and uncouple cars and engines and the hose and chain attach-ments thereof, both enroute and at some passenger terminals.

5. Pick up, set out, place and switch loaded and occupied passenger cars enroute and at some passenger terminals.

6. Read the Conductor's train orders and familiarize himself with them to determine where opposing trains are to be met or passed, and observe position of all train order signals and see that train orders affecting the movement of trains are picked up enroute.

The Trainmen never questioned the performance of the work in controversy by the Porters or by brakemen until April, 1946, when by letter addressed to an officer of the Carriers they contended that all such work should be performed by brakemen and they threatened to file a claim against the carrier for each available brakeman first out on the extra board every time a train was run on which the work in controversy should be performed by anyone except a brakeman. Prior to the issuance of the restraining order of the court, during the period from April 10, 1946, to June 24, 1946, 688 claims totaling $6,447.96 had been filed; and it was estimated that such claims at the time of the trial aggregated more than $100,000. The Carriers in their pleadings admitted that the Trainmen by their threats had in some measure influenced them in their decision to cancel their contract with the Porters and that they will cancel said contract unless restrained from so doing.

In the two former appeals of these cases this court reviewed the pleadings and the law and determined the procedural questions raised by the parties to the litigation. We shall not discuss here the questions already decided on these two appeals. In the second opinion, 182 F.2d 996, 1000, this court said:

"We agree with the trial court that the plaintiffs are entitled to have the issues in this controversy determined on their merits."

The issues have now been tried on their merits, and the trial court has determined them in favor of the plain-

tiffs. The decree now appealed from permanently enjoins the defendant Carriers from violating their contract, as found by the court, with the Porters, and enjoins the Trainmen from seeking to enforce their demands as described in the findings against the Carriers.

The pleadings and the evidence make it clear that the only reason that the Carriers are willing to cancel their contract with the Porters and to award the services in dispute to the Trainmen is the result of the demands and threats of the Trainmen. This identical situation was presented to the court in Hunter v. Atchison, T. & S. F. Ry. Co., 7 Cir., 171 F.2d 594, 597, and the court there, in affirming the district court's holding that an award of the National Railroad Adjustment Board of work formerly done by the Porters, although without a contract, was void, said:

"If long custom and practice means anything, and we think it does, they [the Porters] had a claim on the disputed work superior to the brakemen or any other class. Their employment, even though at will, was at the will of the carriers and not that of the brakemen. As was said in Truax v. Raich, 239 U.S. 33, 38, 36 S.Ct. 7, 9, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283: 'The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others * * * by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will.' "

The appellants contend that some of the facts found by the trial court are not supported by substantial evidence. We have carefully read and considered the entire record; and we think that all the material facts are either admitted or that they are abundantly supported by the evidence. In the case of Howard v. St. Louis-San Francisco Ry. Co., 8 Cir., 191 F.2d 442, this court reversed the district court, Howard v. Thompson, E.D.Mo., 72 F.Supp. 695. Upon granting certiorari, the Supreme Court upheld this court in the case of Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 1023, 96 L.Ed. 1283, and there said: "This case raises questions concerning the power of courts to protect Negro railroad employees from loss of their jobs under compulsion of a bargaining agreement which, to avoid a strike [of brakemen], the railroad made with an exclusively white man's union."

In that case the labor unions involved were the same labor unions involved here; the issues and material facts are the same. The Supreme Court there remanded the case to the district court with instructions permanently to enjoin the Trainmen's union and the railroad from the use of any device to oust the negro train porters from their jobs.

Since we cannot distinguish the controlling facts in the Howard case, supra, from the controlling facts in this case, the decision appealed from is accordingly

Affirmed.