**B. P. BOOS, Plaintiff,**

v.

**RAILWAY EXPRESS AGENCY, Inc., a Corporation, Defendant.**

Civ. No. 626.

United States District Court
D. South Dakota, W. D.
Aug. 14, 1957.

Ken C. Graves and Roswell Bottum, Rapid City, S. D., for plaintiff.

H. R. Hanley, Rapid City, S. D., for defendant.

MICKELSON, Chief Judge.

This action is brought under 45 U.S.C.A. § 153(p) to enforce Award No. 6861 made on January 31, 1955, by an order of the Third Division of the National Railway Adjustment Board.

The facts were submitted entirely by stipulation of the parties.

Pursuant to a contract of March 1, 1929, between the defendant, Railway Express Agency, Inc., and the railroads of this country, the defendant conducts express business as the agent of the railroads. Prior to December 1, 1939, the defendant rendered such service, under the 1929 contract, to the Chicago and North Western Railway Company on its train service between Rapid City and Newell, South Dakota. On that date the Railway discontinued such train service and entered into a special contract with the defendant by which the defendant agreed to furnish the Railway, subject to the Railway's direction and control, truck service for the transportation of freight and express over the Rapid City to Newell route. This special contract provided for cancellation by either party on thirty days notice. From December 1, 1939, until January 1, 1951, defendant furnished such truck service to the Railway.

The plaintiff, B. P. Boos, entered the employment of the defendant on January 29, 1940, and, at all times since that date, has been a member of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees. From May 13, 1946, until January 1, 1951, plaintiff was assigned to a chauffeur position on the truck service rendered to the Railway by the defendant over the Rapid City to Newell route.

At all times pertinent in this suit, the defendant and its employees represented by the Brotherhood mentioned above have been governed by a collective bargaining agreement entered into by them on August 1, 1937, and renewed, in substantially the same form, on October 1, 1940, and on September 1, 1949. The bargaining agreement, entitled Agreement Governing Hours of Service and Working Conditions, sets forth the mutual rights and obligations of employer and employee, and, in Article XI, Rule 79-A, provides:

"Established positions shall not be discontinued and new ones created under the same or different titles covering relatively the same class of work which will have the effect of reducing the rate of pay or evading the application of these rules."

In order to comply with its obligation to other railroads that all of the express operations be conducted on a profitable basis, the defendant, on November 30, 1950, gave notice to the Railway of the necessity for granting authority for a rate increase on the Rapid City to Newell route, which had been operated at a loss for over two years prior thereto. The Railway refused the request and agreed to the termination of the special contract. Consequently, upon the termination of the special contract on December 31, 1950, the chauffeur position of the plaintiff was abolished.

Subsequent to the termination of the special contract, the Railway contracted or arranged on some basis with Rousch Transfer Company to handle express and freight over the route in question. The work thereafter performed by Rousch, whose employees have no rights under the bargaining agreement, has been substantially the same as had been previously performed by the defendant. The defendant had no voice in any arrangements made between the Railway and Rousch, and has had nothing whatsoever to do with the haulage over this route since January 1, 1951. The defendant does maintain terminal offices at towns along the route at which express is received from and delivered to Rousch, such terminal activities being performed by defendant as the agent of the Railway under the 1929 contract.

It is admitted that at all times pertinent in this suit, the work of carriage of express matter between Rapid City and Newell was the property of, and belonged to, the Railway, and that defendant when operating the truck route was the agent of the Railway. Further, the truck operations on this route were conducted pursuant to authority given to the Railway by the Interstate Commerce Commission (Docket MC-715) and the South Dakota Public Utilities Commission (Docket 690).

Upon the abolition of his position, plaintiff chose not to take another position with the defendant and voluntarily placed himself on the furlough roster, where he has been carried ever since. After following the usual method of procedure for the handling of grievances before the defendant's officers, the Brotherhood, on behalf of the plaintiff, claiming a violation of the bargaining agreement by the defendant and seeking restoration of the abolished position and compensation to plaintiff for salary lost, brought the action which resulted in Award No. 6861, sustaining this claim. Plaintiff brings this action himself to enforce the award, and the case is before the Court on motions by both defendant and plaintiff for summary judgment.

■ While plaintiff is correct in his claim that he has made a prima facie case, the findings of fact of the Adjustment Board are not conclusive and cannot be compared to the definite requirements of findings of fact in the ordinary non-jury case. Kirby v. Pennsylvania R. Co., 3 Cir., 1951, 188 F.2d 793. See also, Thomas v. New York, Chicago & St. Louis R. Co., 6 Cir., 1950, 185 F.2d 614. At best, these findings are comparable to expert testimony. Washington Terminal Co. v. Boswell, 1941, 75 U.S.App.D.C. 1, 124 F.2d 235. In this case, however, the weight ordinarily given to the award of the Adjustment Board is overcome by

reason of the stipulation of facts entered into between the parties.

The stipulation reveals substantial departures from the allegations of plaintiff's complaint, with the result of leaving very little for this Court to decide. To support his claim that the defendant violated the bargaining agreement, plaintiff alleges that the defendant had contracted and turned over the work, previously performed by the plaintiff, to Rousch. If this were so, the effect would have been a turning over of work by the defendant from Brotherhood employees to non-Brotherhood employees, clearly a violation of the bargaining agreement. But this allegation is nullified by the stipulations that the Railway contracted with Rousch, and that defendant had nothing whatsoever to do with the transfer of work to Rousch. It is further alleged by plaintiff that the defendant has continued to offer the same express service, and to require the same type of work of Rousch as was performed previously by the plaintiff, but it is specifically stipulated that, subsequent to January 1, 1951, the defendant has had no work and performed no service over the truck route in question. It is evident that this was nothing more than a withdrawing of the work by the Railway from the defendant, which the Railway was privileged to do under its contract with the defendant, and a re-assigning of such work to Rousch. The defendant was placed in the situation of no longer having any work available to which the position of plaintiff applied. The fact that defendant maintains terminal offices on the route has no bearing on the abolition of the chauffeur position, and it cannot be contested that the Railway, the party who controls the work, can withdraw a part, or the whole, of the work as it so desires.

■ Under these circumstances there was no obligation on the defendant under the bargaining agreement to continue this position for which it had no work. The only obligation remaining to the defendant was to allow the plaintiff to exercise his seniority rights under the bargaining agreement in the selection of another position with the defendant. It is not contended that the defendant failed to give the plaintiff opportunity to do so, but, in fact, the plaintiff declined to exercise his rights.

■ There is no question in this case concerning to whom the work belongs. It is stipulated that at all times the work of carriage of express belonged to the Railway. The work never belonged to the defendant except as it was delegated by the Railway. Therefore, it was impossible for the plaintiff to acquire an ownership interest in the work, which would entitle him to restoration of such work, because he could obtain no better title to, or interest in, the work than the defendant, the party from whom he acquired such title or interest. However, it is the plaintiff's contention that under the bargaining agreement he acquired a right to have his position maintained, or, in lieu thereof, be paid the salary for such position, even though the defendant no longer had the work to offer and the Railway had turned such work over to Rousch. We find no validity in this contention.

Plaintiff apparently concedes the right of the Railway to determine how the express is to be transported, but claims that he has a right to perform the work of handling the express. This is inconsistent with the fact that plaintiff's former position, to which he seeks to be restored, is that of a chauffeur. In any event, when the Railway withdrew the work from the defendant, all of the work, of whatever nature, formerly performed by the plaintiff in his chauffeur position, left the defendant's control and no longer fell within the scope of the bargaining agreement.

The Court does not deem it material to a decision herein as to whose action caused the cancellation of the special contract. It remains a fact that once the special contract was terminated, the work within the scope of the bargaining agreement no longer existed.

Nor does this case turn on the question of the impossibility of performance of

the award. Although it is difficult to imagine what kind of an effective order this Court could enter that would restore the work to the plaintiff, since it must be remembered that the Court has no jurisdiction over the Railway which admittedly controls the work, I refuse to enforce this award not because of this difficulty but because it is obvious for all the reasons herein stated that plaintiff is not entitled to enforcement.

The opinion of the Adjustment Board in this award discloses that the decision there rested upon findings of fact which are contrary to the stipulation of facts presented to this Court. The opinion is premised upon the finding that the defendant turned over the work to Rousch and thus had twice contracted the work. This finding is the same as the allegation of plaintiff's complaint, but it is nullified by the stipulated facts before this Court. That opinion further states that the defendant continues to perform the work, while the stipulated facts herein are to the contrary.

The basic difference between the Adjustment Board's opinion and the stipulated facts in the case at bar lies in its conclusion that the work initially belonged to the defendant, wherein it is stated:

"In support of its position the Agency relies on numerous Awards holding that a Carrier does not violate an agreement such as is here involved, by removing work covered by its scope rule when another Carrier, from whence such work came and to whom it belonged in the first instance, sees fit to take it back. *There is no question about the soundness of the rule announced in such Awards.* The trouble from the Agency's standpoint is that they deal with situations where the work came initially from the Carrier, or other concern, taking it away. Here the reverse is true. The work in question came from the Agency who gave it to the Railroad pursuant to another contract, to which the Claimant was not a party." (Emphasis added.) Award No. 6861, 3rd Division, NRAB, Pages 3–4.

It seems quite clear that had the Adjustment Board before it the same facts as were presented to this Court, the award would not have been granted.

■ Throughout the Adjustment Board opinion, however, there appears a basic misunderstanding of the relationship between the defendant and the railroads.[1] The opinion seems to overlook the long-standing law that it is the duty of the railroads to furnish express service, The Express Cases, 1886, 117 U.S. 1, 6 S.Ct. 542, 628, 29 L.Ed. 791, and that the Railway Express Agency is only an agent of the railroads in the furnishing of this service.

The Court has given careful consideration to all the authorities submitted by the parties and has found none of them to be controlling in this action.

■ Nowhere in this record can the Court find any indication of bad faith or subterfuge on the part of the defendant in an effort to relieve the plaintiff of his livelihood, as was suggested by counsel for plaintiff on oral argument. On the contrary, it appears that the defendant has carried plaintiff on its employment roster since the abolition of the chauffeur position in the event he should wish to return to work.

The Court concludes, therefore, that there is no genuine issue as to any material fact in the action now before it; that the defendant is entitled to a summary judgment dismissing plaintiff's complaint on its merits as a matter of law; and that plaintiff's motion for summary judgment in his favor should be denied. A summary judgment should be, and is, granted to the defendant. It is so ordered.

1. It is noteworthy that this misunderstanding was assailed by the five dissenting members of the Adjustment Board in Award No. 6861.