Fletcher H. HANSON, William H. Henderson, Oshel C. Scragg, Harrison Bradshaw, Arthur Lee Masterson, Clarence E. Cyrus, Denver Bowman, Earl Scragg, Milford Maynard, C. B. Taylor, Alderson W. Mills, Elbert Keesee, Martin Prince, James H. Napier, Warren S. Mellert, and Okey Farley, Petitioners,

v.

CHESAPEAKE AND OHIO RAILWAY COMPANY, A Corporation, Respondent.

Civ. A. No. 1061.

United States District Court
S. D. West Virginia,
at Huntington.
Sept. 30, 1961.

Robert D. Phillips, Huntington, W. Va. (Daniel & Phillips, Huntington, W. Va., on the brief), for petitioners.

Edwin W. Conley, Huntington, W. Va. (Fitzpatrick, Huddleston & Bolen, Huntington, W.Va., on the brief), for respondent.

HARRY E. WATKINS, District Judge.

This is a petition, under 45 U.S.C.A. § 153, First (p), to enforce an order of the National Railroad Adjustment Board, Third Division. There are sixteen petitioners and the total amount claimed is $200,000 plus reasonable attorney's fees for petitioners' attorneys.

The controversy that was before the Board concerned the Huntington, West Virginia, and Ashland, Kentucky freight stations, two of many such stations maintained by the respondent-carrier to break package cars and sort the contents for further loading and shipping. The Huntington and Ashland stations are about 16 miles apart and are in different seniority districts. Early in 1955, the respondent-carrier enlarged its Ashland facilities and began to divert to Ashland cars formerly loaded to break bulk at Huntington. Cars from 22 different origins formerly billed to Huntington were, effective with this change, directed to Ashland. At the same time, the work of checking, unloading and transferring less-than-carload freight, moving in car-loads from their point of origin, that was formerly performed by the Huntington employees began to be handled at Ashland. During the spring of 1955, respondent-carrier abolished ten clerical (Group 1) and thirteen Group 3 positions at Huntington.

The union went before the Board and claimed that the respondent-carrier violated its Clerical Agreement by making these changes without consulting the union. The Board, with five members dissenting, agreed with the union and rendered an award which is the basis of this enforcement action.

All of the petitioners claim that they were damaged by the respondent's action and that they are persons for whose benefit the award was made. Four of the petitioners allege that they were members of Group 1 whose positions were abolished. One of these, Hanson, further alleges that because his job in Huntington was abolished, he was forced to transfer to respondent's St. Albans, W. Va. station, thereby causing him to have to travel a far greater distance to his work which resulted in a great loss of time and money.

Ten of the petitioners allege that they were members of Group 3 whose positions were abolished. One of these, Napier, further alleges that he was given the election either of taking another job with respondent or with being fired. He chose to lose his job rather than take that which was offered to him.

One petitioner, Henderson, alleges that he was displaced by other employees with higher seniority rights when their positions were abolished by the transfer of work to Ashland.

Finally, petitioner Oshel Scragg alleges that he was forced to transfer to respondent's Raceland, Ky., station, thereby causing him to have to travel a far greater distance to his work which resulted in a great loss of time and money.

The respondent has filed a motion to dismiss the petition on the ground that jurisdiction still lies with the N.R. A.B. because the "findings" of that Board

are too vague, indefinite and incomplete to be judicially enforced.[1] Whether an award is judicially enforceable depends upon the facts and circumstances of each case. To resolve this motion, therefore, the court must proceed to analyze the facts and circumstances of this case.

The order of the Board reads:

"The Chesapeake and Ohio Railway Company (Chesapeake District) is hereby ordered to make effective Award No. 9193, made by the Third Division of the National Railroad Adjustment Board (copy of which is attached and made part hereof), as therein set forth; and if the Award includes a requirement for the payment of money, to pay to the employee (or employees) the sum to which he is (or they are) entitled under the Award on or before *April 1, 1960.*"

Next is Award Number 9193 which contains the following Statement of Claim of the union:

"(a) That the Carrier violated and continues to violate the Clerical Agreement when beginning on or about April 12, 1955, it did without conference or agreement arbitrarily and unilaterally remove work from the Huntington, West Virginia seniority district and transfer same to the Ashland, Kentucky seniority district and place it at Ashland, Kentucky, and

"(b) That each and every employe whose position was nominally abolished, other employes at interest who in any way suffered wage loss or were adversely affected through the arbitrary action of the Carrier in disregarding their seniority rights and removing their work to another seniority district and denying them the right to follow such work be compensated for any and all loss or adverse effect retroactive to the date on which the violation occurred. Claim to continue until correction is made."

The Opinion of Board gives a detailed statement of the facts, the position of the Carrier, and a decision by the Board, the relevant portions of which are as follows:

"In our opinion, the real question presented by this record is whether or not the changes under consideration amounted to a removal of the work out of one seniority district and into another. Despite the Carrier's arguments to the contrary, we are satisfied that this question must be answered in the affirmative. The practical significance of this situation, the basic facts of which are undisputed, does not differ substantially from any case where the Carrier, for operational or other considerations, decides to withdraw work from the employes who theretofore had performed it and to assign it instead to employes in a different seniority district. There is no doubt but that the realistic and inevitable result of the changes however they were accomplished, was to cause employes within the Huntington seniority district to lose work they had been performing to employes in another and entirely separate seniority district. The situation is to be distinguished from those where the work was actually abolished.

"Rule 6 of the controlling Agreement, notably sections (c), (d), (e) and (f) thereof, provides that Ashland and Huntington are separate seniority districts that are not to be changed in the absence of agreement between the contracting parties. Those sections, considered together with Rules 1(a) and (b), 3 and 17 (e), underline the importance of district seniority.

"It is well settled that seniority is a valuable property right. See Award 4987. That right would be devoid of strength and meaning if

---

1. Respondent also pointed to a pleading defect concerning the jurisdiction of this court, but this has been corrected by amendment.

it represented merely a paper designation and there was no work for its holders to perform. See Award 5078. The entire purpose and underlying spirit of the seniority provisions require that, in the interest of the employes' seniority, their statutory bargaining agent be consulted before any move of the type in question is made that will impair their valuable seniority rights. Accordingly, not even to consider the effect of the aforementioned changes with the Brotherhood constitutes a violation of Rules 1, 3 and 6 of the Agreement. To hold otherwise would be to encourage the emasculation of that Agreement. Manifestly, operational changes by the Carrier must be effected in a manner that is compatible with its contract commitments."

In sustaining the claim and making the award, the Board held:

"* * * that before making changes that will shift work out of one seniority district and into another to the obvious detriment of one group of employes, the Carrier must consult the appropriate bargaining representatives of the employes affected in a bona fide effort to mitigate the impact of the changes upon those employes.

"Under the circumstances, the claims will be sustained."

The respondent's main complaint is that these "findings" do not name the employees to be paid, what sums they are to be paid, or what method of computing lost wages or other damages is to be used. Respondent also says that the unenforceability of the findings is attested to by the fact that individual members of the union, rather than the union itself, are seeking enforcement; that the union must feel that the findings are unenforceable or else it would be seeking enforcement since it appeared in the action before the Board.

The latter contention of respondent is untenable. The conclusion that the union considers the award unenforceable may not be drawn from the fact that the union has not chosen to prosecute enforcement proceedings. The statute clearly states that the petitioner before the Board (here the union), "* * * or any person for whose benefit such order was made * * *" may ask for enforcement in the district court. 45 U.S.C.A. § 153, First (p). The fact that the individual members of the union are asking for enforcement in this court, as they are allowed to do under the statute if they are persons for whose benefit the order was made, cannot be used to question the enforceability of the findings upon which they are proceeding.

As stated above, respondent's main complaint is that the "findings" do not name the employees to be paid, what sums they are to be paid, or what method of computing lost wages or other damages is to be used. The question for decision here is whether the absence of these elements from this award makes it so indefinite that it cannot be enforced by this court. An examination of a few cases will aid in the resolution of this issue.

Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, affirmed 319 U.S. 732, 63 S.Ct. 1430, 87 L.Ed. 1694, involved the question whether the enforcement procedures of 45 U.S.C.A. § 153, First (p) were impliedly exclusive of others to determine rights arising under collective agreements. In its resolution of this issue, the court discussed the advantages given to the employee by this section of the act:

"The statute also relieves the employee of another burden. It provides that the enforcement suit 'shall proceed in all respects as other civil suits, except that on the trial * * * the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated.' 45 U.S.C.A. § 153, First (p). The burden of proof, in making a prima facie case, may be financial as well as procedural, and it may be heavy. The statute relieves the employee of this, at least to

some extent, when he introduces the findings and order in evidence. Though they may not make his case finally, they do so initially. They also bring to the court the weight of decision on facts and law by men experienced in contracts, disputes and proceedings of this special and complicated character. The whole adjustment procedure up to the point of award, findings and order by the Board, appears to be constructed upon the idea that it is not the business of lawyers, but is the business of railroad men, workers and managers alike. That does not make their findings and decisions less probative; rather it should make them more so. They know the language, functions and purposes of railroads and of their collective agreements. Their judgment is informed by experience in negotiating and administering these contracts. Because of this they, perhaps better than lawyers, are qualified to interpret and apply them. Whether so or not, their judgment should carry weight when the judicial stage of controversy is reached. It cannot be assumed, therefore, that the findings have no substantive effect, merely because they were not given finality, as to either facts or law. They are probative, not merely presumptive in value, having effect fairly comparable to that of expert testimony." 124 F.2d at page 241.

In Kirby v. Pennsylvania Ry. Co., 3 Cir., 1951, 188 F.2d 793, the order of the Third Division of the N.R.A.B. called upon the respondent to make effective a certain award. The award was no more definite than the award in the present case and there, too, it was contended that the award was too vague to be enforced. The language of the Board in both cases is quite similar. The court quoted the Statement of Claim and the award as follows:

"(a) Rule 3–C–2 was violated by the Carrier when positions of truckers, Philadelphia Transfer, held by Pattie S. Hayes, Mary Gambrell, Eula O. Smith, Ora Dorsey and others, were abolished effective May 13, 1946 and the work assigned to Contract Employes not covered by the Rules Agreement.

"(b) These positions be re-established and the incumbents, as well as any others adversely affected, be compensated for any monetary losses sustained. * * * "

"Claim (a) sustained.

"Claim (b) sustained on the reestablishment of the positions for those listed and others adversely affected; that monetary losses sustained be confined to proof of the same, with deductions allowed from earnings from other sources during the period under consideration."

This discussion by the court followed:

"The 'Findings' consist of statements that notice and a hearing were given to the parties, the division has jurisdiction, and that the claim is sustained. The opinion summarizes the parties' positions, cites several awards and concludes that defendant violated the rules agreement. It does not summarize the facts. The remainder of what is called Award No. 4291 is simply a reprint of the submissions of the parties.

"All this comes a long way from being the neat, definite and precise findings of fact and conclusions of law from the pen of an experienced and conscientious trial judge made pursuant to the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

"Does it follow that a complaint based on such an award is too vague to be made the basis of an enforcement decree by a court? It is to be borne in mind that this Railroad Adjustment Board is not a lawyers' tribunal. It is a bipartisan board composed of railroad men selected, paid and serving at the will of their respective principals, management and railroad unions. Referees are

called in only when the Board is deadlocked. The referees are, we understand, usually lawyers, but they are not permanent employees of the Board. The handling of claims by various divisions of the Railroad Adjustment Board is seldom if ever a matter of taking testimony on controversial facts. The proceedings are carried from one step to another by persons familiar with both background and immediate controversy. When a referee is brought in, he is usually advised of the facts through the respective representatives of each side of the controversy. Everyone concerned knows what the dispute is, though disagreeing upon its settlement." 188 F.2d at page 795.

"While it may be granted that the performance by the Adjustment Board in this informal fashion fulfills with fair satisfaction the purpose for which it was created, it does not fully meet the question of the place of a product of such Board's actions in a court of law. Why should the award of such an informally conducted body have any more standing in a court of law than the minutes of a literary society? The reason is, of course, that Congress has said so. * * *

"So we have this situation. The Congress has provided for the submission of certain railway labor disputes to a body which over the years has established its own method of operation in a way which gives each side a chance to have its problems heard and decided by persons who are thoroughly familiar with the industry and the kind of questions presented. The law-making body has thought well enough of the type of operation to provide for the enforcement of its results where necessary. But it has protected the party who lost before the Board from having unfair advantage taken of him by making the findings of the Board prima facie only. The loser must go forward with attacking proof; but the facts are not conclusively established by the findings. *We think under these circumstances to insist upon the kind of definite requirement of findings of fact to which we are accustomed in the ordinary non-jury case would be doctrinaire and unrealistic. We think courts should take the findings of these divisions of the Railroad Adjustment Board as they come and do what they can with them.* (Emphasis added)

"Conceivably there could be an award so vague as to be incapable of enforcement. But we do not think the one in this case is and we think that a careful reading of the material in the record before us is sufficient to show both the controversy and how it was decided and who the beneficiaries were. This is enough to permit a trial to enforce the award to proceed. Of course the plaintiffs must show that they are within the scope of persons covered in the award since they were not the complainants in the first instance." 188 F.2d at pages 796-797.

■ These cases show that the findings of the Board, though entitled to a certain congressionally ordained significance, are not conclusive and that all parties to this action are entitled to a full day in court. This means that the enforcement action will be like any other damage action in this court, except that certain burdens normally carried by the plaintiff will be eased through the introduction of the findings of the Board. But those findings do not preclude a rebuttal by the respondents and a re-examination by the court. These cases also make it clear that the Board has fulfilled its function, within the congressional scheme of things, if it has used its expertness " * * * to show both the controversy and how it was decided and who the beneficiaries were."

■ Somewhat different conclusions are reached by the Fifth and Seventh Circuits in System Federation No. 59 Railway Employees Dept. of American Federation of Labor v. Louisiana & A.

R. Co., 5 Cir., 1941, 119 F.2d 509, certiorari denied 1941, 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526, and Railroad Yardmasters of North America, Inc. v. Indiana Harbor Belt R. Co., 7 Cir., 1948, 166 F.2d 326. However, in each of these cases there were other compelling reasons why the petition did not state a cause of action and had to be dismissed. Furthermore, there is good reason to distinguish these cases on their facts. In the Fifth Circuit case the court stated:

"Its (the Board's) findings of fact therefore, and its award, instead of being and containing the definite determinations of fact, as to the persons entitled to relief, and the relief to which they are entitled, contemplated and required by the act, consisted of merely general statements, that some of the employees were entitled to some relief, and that those so entitled should be awarded such relief as they were entitled to." 119 F.2d at page 513.

In the Seventh Circuit case the court stated:

"It is argued, and of course it may be true, that the defendant as a matter of fact had knowledge that the order called for the removal of Barker from the seniority roster. If so, it did not acquire such knowledge from the order, award or findings." 166 F.2d at page 330.

In these cases the courts indicated that the order, award and findings did not explain the real controversy and how it was decided. The present award shows that the controversy was whether the transfer, by the carrier, of work from one seniority district to another without consulting the union constituted a violation of the collective bargaining agreement. The Board applied its peculiar knowledge to this issue and, after examining the facts in light of relevant sections of the agreement, decided that such a transfer was a violation thereof, and that all those damaged thereby should be compensated. The controversy and its resolution are thus clearly delineated. It is true that the award does not name the specific beneficiaries or decide and compute specific damage claims. However, as Judge Wyche said in Munsey v. Virginian Ry. Co., D.C.E.D.Va.1941, 39 F.Supp. 881, 884:

"When a trial of this case is held on the merits, evidence can be presented regarding the number of employees involved, their names, amount of overtime work which has been performed by them since the award was entered, the wages which they have received, the wages which they should have received, and the sum due each, if the court finds such sums to be due. If the final judgment of the court is to the effect that the award of the Board should be sustained, a proper decree may be entered ordering the defendant to pay the sums so found to be due to the employees found to be entitled to receive the same. It is to be noted in this connection that the court is expressly authorized by the Railway Labor Act in cases of this kind 'to make such order, and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board.' 45 U.S.C.A. § 153, First (p). It is apparent that the statute contemplates the fullest possible exercise of judicial authority in aid of the awards of this Board and as there is available a judicial procedure whereby the various employees may receive sums due them, the court cannot find that the award is impossible of enforcement at the suit of the present plaintiffs."

When this case was heard on appeal, in Virginian Ry. Co. v. System Federation No. 40, 4 Cir., 1942, 131 F.2d 840, the carrier contended, as does the respondent in this case, that the award of the N.R. A.B. was too indefinite and that the carrier therefore did not know what was expected of it thereunder. The court said:

"This contention, we think, is highly technical. The award of the Board, No. 258, reads as follows:

" 'Claim of employees sustained to the effect that turbine and switch-

board operators in the Narrows, Virginia, plant come under the scope of the agreement between the parties, and effective from this date payment for time worked will be allowed accordingly.'" 131 F.2d at pages 844–845.

There followed this language which shows the complimentary effect the court provides when enforcing an award:

"We are satisfied that the interested parties knew precisely just what relief was sought on behalf of the four employees. The Board had no difficulty as to just what it was asked to do. The award was no puzzle either to Judge Wyche or Judge Way. And Judge Way has, on this award, entered a precise and specific judgment with a mathematical accuracy that is hardly open to contest." 131 F.2d at page 845.

■ Just as in any other civil case, the plaintiffs here will have to prove that they are within the class of persons entitled to recover and that they have sustained damages. And, just as in any other civil case, if their proof fails, so will they.

■ Respondent wonders who is included in the following language of the Claim: " * * * each and every employe whose position was nominally abolished, other employes at interest who in any way suffered wage loss or were adversely affected * * *." The award in the Kirby case, supra, contained language that " * * * any others adversely affected, be compensated for any monetary losses sustained. * * *" [188 F.2d 795] and the Third Circuit had no trouble in upholding that award. But respondent considers such language incapable of limitation to definite boundaries of affectation. However, an application of the law of damages, with its element of proximate cause, will provide the necessary and desired limitation. And, of course, the ordinary concepts relating to mitigation of damages will apply as each individual is heard, so that final computation of damages may be accomplished

in the same manner as it is in the ordinary damage suit. In short, it was the statutory duty of the Board to decide the controversy which called for their expert knowledge in the construction of this collective bargaining agreement. They have decided the controversy, and the details attendant to this basic controversy are the concern of the court. The Board has performed its function and the court will do likewise.

Respondent's motion to dismiss the petition is denied.

An order may be submitted in accordance with the views herein expressed.