Fletcher H. HANSON et al., Appellants,

v.

The CHESAPEAKE AND OHIO RAIL-WAY COMPANY, a corporation, Appellee.

No. 9962.

United States Court of Appeals Fourth Circuit.

Decided Sept. 16, 1966.

---

Robert O. Ellis, Huntington, W. Va., for appellants.

Edwin W. Conley, Huntington, W. Va. (Huddleston & Bolen, Huntington, W. Va., on brief), for appellee.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

PER CURIAM:

Fletcher H. Hanson and others appealed from a decision of the District Court for the Southern District of West Virginia[1] granting the motion for summary judgment filed by the Chesapeake & Ohio Railway Company (hereinafter C. & O. or railroad), and denying enforcement of an award of the National Railroad Adjustment Board, Third Division. The Board decided that the transfer by the C. & O. of work from one seniority district[2] to another[3] without consulting the union violated the collective bargaining agreement which contained a basic provision that established seniority districts should not be changed without mutual agreement between union and management.

The facts are stated in the opinion of the court below.[4] Briefly, the railroad changed its schedule covering package cars of less-than-carload freight whereby freight, which previously had been billed to Huntington for unloading and transferring into other railway cars for further shipping, was under the new schedule to be billed to Ashland. These points are about sixteen miles apart and are in different established seniority districts. As a result of the increase in bulk-transfer work at Ashland nine new positions were established there. Due to the decrease of work at Huntington twenty-three positions were abolished there. The Railway Brotherhood claimed that the collective bargaining agreement between the brotherhood and the C. & O. had been breached by reason of the abolishment of these positions at Huntington. The dispute reached the NRAB which interpreted the collective bargaining agreement and determined that the changes made by the railroad amounted to the removal of work out of one seniority district into another and that, in view of the entire purpose and underlying spirit of the seniority provisions of the contract which were intended to protect valuable seniority rights, before making such changes to the obvious detriment of one group of employees and affecting their seniority rights the railway must consult the appropriate bargaining representative of the employees affected in a bona fide effort to mitigate the impact of the changes upon those employees.

Certain of the affected employees instituted the action below under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., seeking enforcement of the Board's award. The court below held in effect that, contrary to the Board's determination, under the agreement the making of the schedule change was a prerogative of management; that the railroad was, therefore, under no contractual obligation to discuss it or consult with the brotherhood; that the Board had exceeded its authority to interpret contracts and had changed, altered and rewritten the bargaining agreement; and that the

---

1. Hanson v. Chesapeake & Ohio Ry. Co., 236 F.Supp. 56 (1964).

2. Huntington, West Virginia.

3. Ashland, Kentucky.

4. 236 F.Supp. 56 at p. 57.

issue involved was not within the terms of the agreement.

This court, per curiam, affirmed [5] the court below. The Supreme Court granted the petition of Hanson et al., for a writ of certiorari, vacated our judgment, and remanded the cause to us "for further consideration in light of *Gunther v. San Diego & Arizona Eastern Railway Co.,* 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 [December 8, 1965]."[6]

In *Gunther,* the Court said:

" * * * Certainly it cannot be said that the Board's interpretation was wholly baseless and without reason. We hold that the District Court and the Court of Appeals as well went beyond their province in rejecting the Adjustment Board's interpretation of this railroad collective bargaining agreement. As hereinafter pointed out Congress, in the Railway Labor Act, invested the Adjustment Board with the broad power to arbitrate grievances and plainly intended that interpretation of these controversial provisions should be submitted for the decision of railroad men, both workers and management, acting on the Adjustment Board with their long experience and accepted expertise in this field." (382 U.S. at 261–262, 86 S.Ct. at 371).

\* \* \* \* \* \*

" * * * This Court has said that the Railway Labor Act's 'provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field.' " (382 U.S. at 262, 86 S.Ct. at 371).

\* \* \* \* \* \*

" * * * Also in *Locomotive Engineers v. Louisville & Nashville R. Co.,* 373 U.S. 33 [83 S.Ct. 1059, 10 L.Ed.2d 172], the Court said that prior decisions of this Court had made it clear that the Adjustment Board provisions were to be considered as 'compulsory arbitration in this limited field,' * * * 'the complete and final means

for settling minor disputes,' * * * and 'a mandatory, exclusive, and comprehensive system for resolving grievance disputes.' * * *." (382 U.S. 263–264, 86 S.Ct. 372).

The Adjustment Board, rather than relying upon the literal and technical provisions of the agreement, looked to the over-all effect of shifting work from one seniority district to the other and the impact of the changes upon one group of employees which resulted from operations pursuant to the unilateral decision of the railroad.

In obedience to the Supreme Court's order of remand we have reconsidered this case in light of *Gunther.* Bearing in mind the principles enunciated in *Gunther* and the application thereof in the instant case we accept that decision as compelling the holding: That the Board's interpretation of the collective bargaining agreement here involved is not "wholly baseless and completely without reason"; that, if the railroad were to be permitted to shift such operations from one seniority district to another without conferring with the representative of the aggrieved employees, the practical effect would be to allow it to destroy the seniority rights of the workers as fully and completely as if it had discharged certain employees within the seniority district without cause and had then employed others in different classifications to replace them.

In view of its decision that the railroad had acted within its rights and had violated no contractual obligations the District Court did not consider the money awards to the aggrieved employees. We feel compelled to vacate the judgment below and to remand the case for such further proceedings not inconsistent with this opinion as may be necessary under the pleadings filed to determine the amount of damages to which each of the aggrieved petitioners is entitled.

Reversed and remanded.

---

5. 351 F.2d 953 (4 Cir., November 4, 1965).

6. Hanson v. Chesapeake & O. Ry. Co., 384 U.S. 211, 86 S.Ct. 1464, 16 L.Ed.2d 481 (1966).