Fletcher H. HANSON et al., Petitioners,

v.

The CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation, Respondent.

Frank ABSHIRE et al., Petitioners,

v.

The CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation, Respondent.

Civ. A. Nos. 1061, 1117.

United States District Court
S. D. West Virginia,
Huntington Division.
June 28, 1968.

402

Robert O. Ellis, Huntington W. Va., for petitioners.

Amos A. Bolen, Huddleston & Bolen, Huntington, West Virginia, for respondent.

CHRISTIE, District Judge:

Petitioners in these two suits, consolidated for trial by Order of this Court entered November 10, 1962, each seek enforcement of an order of the National Railroad Adjustment Board pursuant to Title 45 U.S.C.A. Section 153 of the Railway Labor Act. The petition of Hanson and others was originally filed in this court on February 23, 1961, and the petition of Abshire and others on March 31, 1962. On December 8, 1964, in ruling on a motion for summary judgment, this Court denied enforcement of the Hanson petition and dismissed that claim with prejudice. Hanson v. Chesapeake & Ohio Railway Company, 236 F.Supp. 56 (S.D.W.Va.1964). On appeal the Court of Appeals for the Fourth Circuit, per curiam, affirmed. Hanson v. Chesapeake & Ohio Railway Company, 351 F.2d 953 (4th Cir. 1965). The Supreme Court granted certiorari and subsequently vacated the judgment of the Fourth Circuit Court, remanding the cause "for further consideration in light of Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308." Hanson v. Chesapeake & Ohio Railway Co., 384 U.S. 211, 86 S.Ct. 1464, 16 L.Ed.2d 481 (1966). In obedience to the order of the Supreme Court, the Fourth Circuit Court reconsidered and vacated this Court's previous judgment and remanded the case for further proceedings. Hanson v. Chesapeake & Ohio Railway Co., 367 F.2d 134 (4th Cir. 1966).

As is obvious from the above summary of the proceedings taken thus far in this litigation, much difficulty has been encountered by the petitioners in attempting to enforce the order of the National Railroad Adjustment Board issued on January 18, 1960. While such delays are to be avoided where possible, nevertheless, under the circumstances of the present case, petitioners failure thus far to secure enforcement of the Adjustment Board's award is not without rational explanation. This explanation together with the facts upon which the order of the Railroad Adjustment Board are based to provide a logical starting point for discussion in the present opinion as well as the foundation upon which our ultimate disposition of the case must be based.

During the months of March and April, 1955, the Chesapeake and Ohio Railway Company changed its schedule covering package cars of less-than-carload freight, whereby freight which previously had been billed to Huntington, West Virginia, for unloading and transferring into other railway cars for further shipping was under this new sched-

ule to be billed to Ashland, Kentucky. The Huntington and Ashland stations are about sixteen miles apart and are in different seniority districts. As a result of this increase in bulk-transfer work at Ashland, nine new positions were established there. At the same time, due to the decrease of work at Huntington, the railway company abolished twenty-three positions there. On July 15, 1955, the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees filed a claim against the railway company stating that the collective bargaining agreement they had with it had been breached by the company in abolishing these positions at Huntington without consulting the statutory bargaining agent of the employees affected. When union and management representatives were unable to settle the dispute, the Brotherhood filed its claim with the National Railroad Adjustment Board's Third Division. In its claim before the Adjustment Board, the Railway Brotherhood alleged:

"(a) That the Carrier violated and continues to violate the Clerical Agreement when beginning on or about April 12, 1955, it did without conference or agreement arbitrarily and unilaterally remove work from the Huntington, West Virginia seniority district and transfer same to the Ashland, Kentucky seniority district and place it at Ashland, Kentucky * *."

The relief sought by the Brotherhood under its claim before the Adjustment Board was:

"(b) That each and every employe whose position was nominally abolished, other employes at interest who in any way suffered wage loss or were adversely affected through the arbitrary action of the Carrier in disregarding their seniority rights and removing their work to another seniority district and denying them the right to follow such work be compensated for any and all loss or adverse effect retroactive to the date on which the violation occurred. Claim to continue until correction is made."

In its opinion, the Adjustment Board held that the carrier was required to consult with the appropriate bargaining representatives before it made changes which shifted work out of one seniority district and into another "to the obvious detriment of one group of employes." Under the facts of the present case the Board found that the agreement between the Railway Brotherhood and respondent "was violated." The "AWARD" portion of the opinion stated only that the claims had been "sustained," without referring to the merits of any particular individual's claim or the amount due. Petitioners, unable to reach an agreement with respondent with respect to the award, sought enforcement of their claims in this court.

The standard of review then applicable in the District Courts was as follows:

"* * * Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated * * *."

This statute was construed to call for a trial *de novo* on the merits of the claim, however, where the Board's order was adverse to the railway, a shift in the burden of proof resulted requiring the railroad to prove that the award was wrong rather than requiring the petitioners to establish the validity of the award. Cf. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees v. Atlantic Coast Line R. Co., 253 F.2d 753 (4th Cir. 1958); Russ v. Southern Ry. Co., 334 F.2d 224 (6th Cir. 1964). With respect to the *money awards* of the Adjustment Board at the time the *Hanson* case was dismissed, the Railway Labor Act, 45 U.S.C.A. Section 153 First (m) provided that,

"The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the

awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute, *except insofar as they shall contain a money award.*" (Emphasis supplied).

Under this provision final determination of the amount of money awards was routinely made by the Court, as in other civil suits where the amount of damages must be determined. Brotherhood of Locomotive Engineers v. Louisville & Nashville R. Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Raabe v. Florida East Coast Ry. Co., 259 F.Supp. 351 (M.D.Fla.1966).

■ In ruling on petitioners' claims, pursuant to the above-mentioned statutory and case law, this Court held, on motion for summary judgment, Hanson v. Chesapeake & Ohio Railway Company, 236 F.Supp. 56 (S.D.W.Va.1964), that under the agreement between the Railway Brotherhood and respondent the making of the schedule change was a prerogative of management and that the railroad was, therefore, under no contractual obligation to discuss it or consult with the Brotherhood. We accordingly denied enforcement of the Board's award and dismissed petitioners' claims founded thereon, in accordance with the case law as it existed at that time. The Fourth Circuit Court of Appeals affirmed. The Supreme Court, however, subsequently decided the case of Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), wherein it for the first time held that a District Court could not rule upon the Adjustment Board's findings on the merits merely because one part of the Board's order contained a money award. In emphasizing that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board, the Court held that a Board decision was entitled to the same finality as a decision of arbitrators would have. In the course of its opinion, the Court made the following remarks:

"The Railway Labor Act as construed in the foregoing and other opinions of this Court does not allow a federal district court to review an Adjustment Board's determination of the merits of a grievance merely because a part of the Board's award, growing from its determination on the merits, is a money award."

In commenting on the money aspect of the Board's award, the Court stated that while the Board's finding on the merits of the claim must be accepted, the District Court had power, under the Act, "To determine the size of the money award." It was on the basis of this decision that the Fourth Circuit reconsidered its former affirmance and remanded the *Hanson* case to this Court, and had the state of the law remained static from the time of the remand to the present date, we would now have no difficulty in carrying out that mandate. However, on June 20, 1966, subsequent to the Supreme Court's decision in both the *Gunther* and *Hanson* cases, the Congress amended the Railway Labor Act restricting review of the awards of the Adjustment Board even more than had the Supreme Court in the *Gunther* decision. In lieu of the "prima facie" status previously given the Board's findings, the Railway Labor Act, as amended, 45 U.S.C.A. Section 153 First (p), now provides,

"If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner * * * may file in the District Court of the United States * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit *the findings and order of the division of the Adjustment Board shall be conclusive on the parties* * * *." (Emphasis supplied).

*Of particular importance for the purposes of this decision is the change made by the 1966 Amendments concerning the question of the finality of the Board's money awards.* Under the Railway Labor Act prior to June 20, 1966, awards of the Adjustment Board were to be final and binding upon both parties to the dispute, "except insofar as they shall contain a money award." Under the Railway Labor Act, as amended, 45 U.S.C.A. Section 153 First (m),

> "The awards of the several divisions of the Adjustment Board \* \* shall be final and binding upon both parties to the dispute \* \* \*."

The exception of "money awards" from the final and binding status given awards of the Adjustment Board is thus no longer applicable under the Railway Labor Act as amended. This deletion of the exception with respect to money awards apparently now requires the District Courts to accord the same finality to the Board's money awards as was previously required to be given the Board's findings on the merits by the Supreme Court in the *Gunther* case.

 The issue now before this Court, arising as a result of the amendments to the Railway Labor Act restricting the scope of review in the District Courts, is whether the award as handed down by the Railroad Adjustment Board is final and capable of enforcement.[1] Extensive research has revealed only two cases discussing this aspect of the problem of enforcement of awards of the Adjustment Board. In a recent case, *Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company*, 284 F.Supp. 401, arising in the Northern District of Illinois and as yet unreported, the Court refused to enforce an award of the Adjustment Board which had sustained the petitioner's claim and required the Railway Company to "compensate" him for "certain hours of work during the period of wrongful discharge." The Court held that the term "compensate" was not self-explanatory, leaving the question open as to whether it required damages "in the gross amount of the time out of work" or whether credit could be given for other work engaged in during the "period of wrongful discharge." In ruling that the Board's order was not "final and capable of enforcement," the Court relied upon the amendment to 45 U.S.C.A. Section 153 First (m), which in its opinion attached "finality to the money award, as well as to other parts of the award," removing the authority of the District Courts "to make an independent determination on the amount of the money award \* \* \*."

In the case of *Sweeney v. Florida East Coast Railway Company*, 389 F.2d 113 (5th Cir. 1968), the defendant Railway Company contended that, under the amended provisions of Section 153 of the Act, the federal courts had been deprived of the power to enforce an award of the Adjustment Board "unless such award be expressed in terms of dollars and cents." In refusing to accept this interpretation of the amended provisions of the Act, the Court made the following remarks:

> "Before that amendment the parties were at liberty to conduct a lawsuit in the district court as to the amount to which the employee would be entitled to receive upon the assumption that all of the other issues in the contro-

---

1. As to the question of the applicability of an amended statute with respect to cases pending but not disposed of at the time of the amendment, the Supreme Court has consistently held that an intervening statutory change, particularly one affecting jurisdiction, is applicable. *United States v. State of Alabama*, 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Bruner v. United States*, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952). Thus, the restriction on this Court's jurisdiction to review the award of the National Railroad Adjustment Board, brought about by the June 20, 1966 Amendments, would be applicable to, and would control, our decision in this case despite the fact that the Board's decision was rendered and the petition filed herein prior to the effective date of the Amendments.

versy were accepted as binding on the parties. * * * In other words, the money award was subject to litigation de novo prior to the adoption of the amendment. It is no longer subject to such litigation. That is all that was accomplished by the adoption of the 1966 amendment referred to above.

"* * * We find no judicial authority for the proposition that it is not a proper function of the district court, when a suit is filed to enforce this award, to determine what actual dollars and cents the employee is entitled to under such an award by the Adjustment Board."

The award in *Sweeney* was "for all time lost" rather than any specific amount and no mention was made of deduction for earnings received from other employment during that period. Nevertheless, the Court was of the opinion that it had jurisdiction, even under the restrictive provisions for review in the 1966 Amendments to the Act, to determine "how much is to be paid."

■ Turning to the award of the adjustment Board in the present case, it is obvious that under the view espoused by the Court in Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, supra, the award to petitioners is not "final and capable of enforcement." Thus, as in the *Brotherhood of Railroad Signalmen* case, the award is merely that certain classes of individuals be "compensated for any or all loss or adverse effect retroactive to the date on which the violation occurred." Even under the more liberal interpretation of the 1966 Amendments by the Court in the *Sweeney* case, the award of the Adjustment Board in the instant case fails to meet the requirements of finality necessary for enforcement in the District Courts. In *Sweeney*, while the Board did not particularize as to the computation of the amount of damages, it did find that a violation of the bargaining agreement had occurred and that the plaintiff was entitled to be compensated as a result of

that violation. In the present case, the Board found only that a violation of the collective bargaining agreement had occurred and that certain classes of individuals should be compensated for any loss they may have suffered as a result of that violation. The classes of individuals to be compensated under the award in the present case were,

"* * * each and every employe whose position was nominally abolished, other employes at interest who in any way suffered wage loss or were adversely affected through the arbitrary action of the Carrier in disregarding their seniority rights and removing their work to another seniority district and denying them the right to follow such work * * *."

Thus in this case the Court is called upon to determine not only the amount of the damages, but also the individuals who are entitled to such damages. A determination of the individuals entitled to compensation would require resort to the collective bargaining agreement between petitioners and respondent as well as resorting to the provisions of the award. Other questions such as the effect of the award on those in "cut-off" status at the time of the violation must also be answered. In effect, this Court would be required to litigate the merits of the claims of each of the petitioners rather than, as contemplated by the Act, enforce an award of the Adjustment Board. Our authority under Section 153 of the Act, as amended, does not permit nor contemplate such extensive *powers of review*. On review in this Court, the findings and orders of the Adjustment Board are "conclusive" and we are limited to either enforcing the award, setting it aside or remanding it to the Board.

Nowhere in the Act is there to be found authority to litigate the merits of individual claims, and in deference to the obvious intent of the Congress in amending the Act in such way as to restrict review in the District Courts, we will not now attempt to interpret the Act so as to establish that power. Petitioners direct particular attention to the fact

that enforcement of the award has already taken up a number of years and that a remand would result in another delay, however, were this Court to assume powers not provided for under the Act and enforce the award as it presently stands, the decision, under the view we take of the Act, would only result in further litigation eventually resulting in its reversal and ultimate remand to the Adjustment Board for an award which was "final and enforceable."

Under the Act prior to the 1966 Amendments, the District Courts had only the power to enforce or set aside orders of the Adjustment Board. Under the 1966 Amendments to the Act, 45 U. S.C.A. Section 153 First (p), provision is now made for a remand to the Adjustment Board,

> "* * * for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. * * *"

As was pointed out by Judge Hoffman in Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, supra, "logic compels the conclusion that an order which lacks finality may be set aside or remanded 'for failure of the division to comply with the requirements of this chapter * * *.' "

While we find ourselves in agreement with Judge Tuttle's conclusion in *Sweeney* that it is a proper function of a District Court when suit is filed to enforce an award of the Railroad Adjustment Board "to determine what actual dollars and cents the employee is entitled to," nevertheless, the absence of findings with respect to the validity of the claims of the individual petitioners leads us to the conclusion that the award in this case is not "final and capable of enforcement."

Under the view we take of the requirements of the 1966 Amendments to the Railway Labor Act, 45 U.S.C.A. Section 153 First (m), we reach the conclusion that we do not have jurisdiction to enforce the award as it is presently constituted. Thus, that portion of respondent's motion for summary judgment challenging our jurisdiction to enforce will be treated as a motion to dismiss and as so treated granted. Consequently, we do not reach the other issues raised by the motion at this time. We accordingly remand this case to the Third Division of the National Railroad Adjustment Board for such further proceedings as may be necessary to resolve the claims of the individual petitioners.

The disposition thus made of the case necessarily requires sustaining respondent's exceptions to the Special Master's report, insofar as his findings and conclusions therein are inconsistent with the views herein expressed.